CATHY C. HARTMAN (NOW SOUTHERN) v. WAYNE R. HARTMAN

No. 8521DC1173

(Filed 6 May 1986)

**Divorce and Alimony § 30— separation agreement—disposition of property rights —equitable distribution barred**

> A separation agreement fully disposed of the parties' rights in both real and personal property arising out of the marriage and thus barred equitable distribution, although it contained no specific references to any real property but only to personal property, where the agreement provided that the parties desired "to settle permanently their rights and obligations," that the parties could engage in all real and personal property transactions "as though unmarried," and that each party "waives and relinquishes any and all rights he or she may now have or hereafter acquire under the present or future laws of any jurisdiction to share in the property or estate of the other as a result of the marital relationship . . . ."

APPEAL by defendant from *Burleson, Judge.* Judgment entered 25 June 1985 in District Court, FORSYTH County. Heard in the Court of Appeals 6 March 1986.

Plaintiff-wife and defendant-husband entered a separation agreement on 2 March 1984. The agreement contains no specific references to any real property but only to personal property. It provides that each party waives and relinquishes any and all rights he or she may have or hereafter acquire in the property or estate of the other as a result of the marital relationship.

The release or waiver provisions are as follows:

> THIRD it is agreed that each of said parties may from this date, and at all times hereafter, purchase, acquire, own, hold, possess, encumber, dispose of and convey any and all kinds and classes of property, both real and personal, as though unmarried, and free from the consent, joinder or interference of the other party.
>
> . . . .
>
> SIXTH, Except as herein otherwise provided, each party waives and relinquishes any and all rights he or she may now have or hereafter acquire under the present or future laws of any jurisdiction to share in the property or estate of the other as a result of the marital relationship, including with-

out limitation, statutory allowance, widow's allowance, homestead right, right to take in intestacy, right to take against the other's estate; and each party will, at the request of the other, execute, acknowledge and deliver any and all instruments which may be necessary or advisable to carry into effect this mutual waiver and relinquishment of all such interest, rights and claims.

Defendant-husband now seeks an award of substantially more than one-half of the parties' marital property pursuant to N.C. Gen. Stat. 50-20, the Equitable Distribution Act. The court granted plaintiff-wife's motion for summary judgment. Defendant-husband appeals.

*Molitoris and Connolly, by Theodore M. Molitoris and Anne M. Connolly, for plaintiff-appellee.*

*White and Crumpler, by G. Edgar Parker, Randolph M. James, and Robin J. Stinson, for defendant-appellant.*

WHICHARD, Judge.

Defendant-husband contends the court erred in granting summary judgment in favor of plaintiff-wife. Specifically, defendant-husband contends summary judgment was not proper because a genuine issue of material fact existed as to whether the separation agreement disposed of the parties' real property. We disagree.

This Court has stated:

G.S. 52-10 allows husband and wife to enter a separation agreement which "release[s] and quitclaim[s]" any property rights acquired by marriage, and that a release will bar any later claim on the released property. Such a valid separation agreement is an enforceable contract between husband and wife. . . . The same rules which govern the interpretation of contracts generally apply to separation agreements . . . . Where the terms of a separation agreement are plain and explicit, the court will determine the legal effect and enforce it as written by the parties . . . . When a prior separation agreement fully disposes of the spouses' property rights arising out of the marriage, it acts as a bar to equitable distribution.

*Morris v. Morris,* 79 N.C. App. 386, 388, 339 S.E. 2d 424, 425-26 (1986), *quoting Blount v. Blount,* 72 N.C. App. 193, 195, 323 S.E. 2d 738, 740 (1984), *disc. rev. denied,* 313 N.C. 506, 329 S.E. 2d 389 (1985).

Defendant-husband contends that the parties never intended the agreement to be a final settlement of all property rights. In support of this contention he stresses that the agreement "makes no mention whatsoever of any real estate or its disposition."

Our Supreme Court has recently reaffirmed that:

'The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.' . . . When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning. . . .

. . . .

'Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it.'

*Bicycle Transit Authority v. Bell,* 314 N.C. 219, 227, 333 S.E. 2d 299, 304 (1985), *quoting Lane v. Scarborough,* 284 N.C. 407, 410, 200 S.E. 2d 622, 624-25 (1973).

This Court also recently stated:

When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court. . . . and the court cannot look beyond the terms of the contract to determine the intentions of the parties. . . . However, when there is ambiguity in the language used, the

intent of the parties is a question for the jury and parol evidence is admissible to ascertain that intent. . . .

Whether . . . the language of a contract is ambiguous or unambiguous is a question for the court to determine. [Citations omitted.]

*Piedmont Bank & Trust Co. v. Stevenson,* 79 N.C. App.. 236, 240, 339 S.E. 2d 49, 52 (1986). In making this determination, "words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible . . . ." *Id.*

Our Supreme Court has noted:

It must be presumed the parties intended what the language used clearly expresses, . . . and the contract must be construed to mean what on its face it purports to mean. . . .

The Court, under the guise of construction, cannot reject what the parties inserted . . . or insert what the parties elected to omit. . . . It has no power to write into the contract any provision that is not there in fact or by implication of law. [Citations omitted.]

*Indemnity Co. v. Hood,* 226 N.C. 706, 710, 40 S.E. 2d 198, 201-02 (1946).

Applying the above principles to the agreement here, we hold that it clearly and unambiguously establishes that the parties' intention was to dispose fully of their respective property rights, both real and personal, arising out of the marriage. The parties stated in the preamble the reason for executing the agreement as follows: "WHEREAS, the parties hereto wish by this Separation Agreement to settle permanently their rights and obligations . . . ." In the body of the agreement the parties specifically agree that either may hereafter "purchase, acquire, own, hold, possess, encumber, dispose of and convey any and all kinds and classes of *property, both real and personal,* as though unmarried . . . ." (Emphasis supplied.) The parties agree further that each "waives and relinquishes any and all rights he or she may now have or hereafter acquire under the present or future laws of any jurisdiction to share in the property or estate of the other as a result of the marital relationship . . . ."

---

---

These provisions clearly reveal the parties' desire for a full and final settlement. An intention to postpone disposition of real property is inconsistent with the operation, effect, and stated purpose of the agreement. If the parties intended to postpone settlement of real property, this agreement would not "settle permanently their rights and obligations" and the parties could not engage in all real and personal property transactions "as though unmarried." The term "property" in paragraph "SIXTH," therefore, when read in the context of the overall agreement, clearly refers to both real and personal property. Likewise, inclusion of specific provisions regarding personal property only does not, in and of itself, create an ambiguity on the face of the agreement concerning the disposition of real property.

Our holding here is consistent with prior decisions. In *Blount v. Blount*, 72 N.C. App. 193, 323 S.E. 2d 738, *disc. rev. denied*, 313 N.C. 506, 329 S.E. 2d 389 (1985), plaintiff-wife asserted that the parties' separation agreement was a support agreement and was never intended to settle all the property rights which arose out of the marriage. *Blount*, 72 N.C. App. at 194, 323 S.E. 2d at 739. In support of this contention, plaintiff-wife noted that although defendant-husband held assets valued in excess of a million dollars, the only property mentioned in the agreement was the homeplace, the home furnishings, and plaintiff-wife's car. *Id.* In the agreement, however, each party released and relinquished any and all property or interest then owned or thereafter acquired, as if the parties had never been married. *Id.* at 195, 323 S.E. 2d at 740. The Court held that this release language was plain and unambiguous and that plaintiff-wife had relinquished all her property rights which arose out of the marriage. Therefore, the agreement was not susceptible to plaintiff-wife's interpretation, *viz*, that she never intended it to be a final agreement. *Id.* at 196, 323 S.E. 2d at 740. The Court noted that, while the agreement did not enumerate in detail the property of defendant-husband, "the fact that specific property owned by either party was not described in the agreement cannot serve, without more, to avoid the unmistakably clear general provisions of the contract." *Id.* at 195-96, 323 S.E. 2d at 740. For the above reasons, the Court found that the agreement was a bar to equitable distribution and thus affirmed summary judgment in favor of defendant-husband. *Id. See also Cone v. Cone*, 50 N.C. App. 343, 274 S.E. 2d 341, *disc. rev.*

*denied*, 302 N.C. 629, 280 S.E. 2d 440 (1981) (language in separation agreement unambiguously established that plaintiff-wife relinquished her rights in the properties in question).

In *White v. White*, 296 N.C. 661, 252 S.E. 2d 698 (1979), our Supreme Court considered whether the support and property provisions of the parties' consent judgment were independent and separable or reciprocal. *White*, 296 N.C. at 667, 252 S.E. 2d at 702. Construing the judgment as a contract between the parties, the Court found that:

> The purpose of the consent judgment was apparently to settle "all things and matters in controversy arising out of the actions and pleadings." This language clearly shows that the parties wished to resolve their then outstanding differences. It does not show, however, that they intended to foreclose any future modification of the support payments. That the payments were denominated "alimony" militates against such an intent, but again it is far from conclusive on the issue.

*Id.* at 668-69, 252 S.E. 2d at 702. The Court thus concluded:

> In summary, it is not clear from the language of the consent judgment, its purpose and its subject matter what the parties intended on the issue of separability. Evidence of the situation of the parties at the time they consented to the judgment is therefore essential to resolution of the issue.

*Id.* at 669, 252 S.E. 2d at 703.

*White* is factually distinguishable from this case. Here, unlike in *White*, the agreement clearly shows the parties' intention to reach a full and final settlement from the date of the agreement and at all times thereafter. Accordingly, *White* does not control here.

Because the language of this agreement is clear and unambiguous, construction of the agreement was a matter of law for the court, and it could not consider extrinsic evidence to determine the intention of the parties. *Piedmont Bank, supra,* 79 N.C. App. at 240, 339 S.E. 2d at 52. *See also Cleland v. Children's Home*, 64 N.C. App. 153, 156, 306 S.E. 2d 587, 589 (1983) and *Grocery Co. v. R.R.*, 215 N.C. 223, 225, 1 S.E. 2d 535, 536 (1939). In

contrast to *Century Communications v. Housing Authority of City of Wilson,* 313 N.C. 143, 326 S.E. 2d 261 (1985), extrinsic evidence is neither necessary nor admissible " 'in order to explain . . .' " the terms of the agreement. *Century,* 313 N.C. at 146, 326 S.E. 2d at 264.

For the above reasons we hold that the agreement fully disposes of the parties' property rights arising out of the marriage and thus acts as a bar to equitable distribution. Accordingly, there is no genuine issue as to any material fact and plaintiff-wife was entitled to a judgment in her favor as a matter of law. N.C. Gen. Stat. 1A-1, Rule 56; *Morris v. Morris,* 79 N.C. App. 386, 392, 339 S.E. 2d 424, 428 (1986). *See also McArthur v. McArthur,* 68 N.C. App. 484, 315 S.E. 2d 344 (1984). The grant of summary judgment in favor of plaintiff-wife thus was proper.

After entry of the summary judgment order and of defendant-husband's appeal entries thereto, defendant-husband filed a motion pursuant to N.C. Gen. Stat. 1A-1, Rule 60(b)(2) and (6) seeking relief from the order. In support of the motion he filed affidavits from Curtiss Todd, the attorney who represented plaintiff-wife and drafted the separation agreement. Todd states that "the intentions of the parties as related to me and as I understood them at the time of the signing of the . . . [agreement were] that the real estate issue would be either negotiated or resolved at a later date after the signing of the [agreement]." Therefore, Todd concludes, the general waiver provision in paragraph "SIXTH" did not constitute a property settlement of the parties' real property. The court entered an order that noted the pendency of defendant-husband's appeal from the summary judgment order and stated that, if the motion were properly before the court, the court would deny it. Defendant-husband argues that this was error.

The record contains no exception to this order and no assignment of error relating to it. It thus is not properly before us for consideration on appeal. N.C. R. App. P. 10(a). If it were, however, we would find it proper. Again, because the language of the agreement is clear and unambiguous, the court could not consider extrinsic evidence, such as Todd's affidavits, to determine the intention of the parties. *Piedmont Bank, supra.*

Affirmed.

Judges WELLS and COZORT concur.