ESTATE OF JAMES H. WATERS, JR., DECEASED, WILLIAM ROGER WATERS AND JOHN B. MCMILLAN, CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Waters v. Commissioner
Docket No. 28290-92
United States Tax Court
T.C. Memo 1994-194; 1994 Tax Ct. Memo LEXIS 183; 67 T.C.M. (CCH) 2837; April 28, 1994, Filed *183 Decision will be entered for respondent. For petitioner: John C. Dorsey. For respondent: Ross A. Rowley. KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By notice of deficiency dated October 2, 1992, respondent determined a deficiency in the estate tax of the Estate of James H. Waters, Jr., deceased, in the amount of $ 399,519. After certain concessions and stipulations by the parties, the following issues remain for us to decide: (1) Whether decedent's interest in his deferred compensation agreement with Boddie-Noell Enterprises, Inc., and in the Boddie-Noell Enterprises, Inc. Savings and Retirement Plan are includable in decedent's gross estate in the amounts of $ 250,000 and $ 206,345, respectively, as determined by respondent rather than in the respective amounts of $ 125,000 and $ 193,475.87, as contended by petitioner; (2) whether respondent was correct to include certain alleged transfers made by decedent to his former wife in the gross estate, or whether petitioner was correct that such transfers were excludable as made for a good and adequate consideration, since they were transferred pursuant to certain documents which had never been delivered *184 to the court clerk or filed of record as orders in the divorce case of decedent and his then wife; (3) whether decedent's gross estate should include, as determined by respondent, the amount of $ 200,000 with respect to a life insurance policy which decedent as owner transferred to his former wife after they were divorced and while settlement negotiations were ongoing; (4) whether decedent's estate was entitled to a deduction for $ 220,000, on account of a promissory note issued by decedent to his former wife; (5) whether decedent's estate was entitled to a deduction of $ 270,000 on account of the alleged obligation of decedent to maintain that amount in life insurance in a trust to be created for decedent's wife; (6) whether decedent's estate was entitled to a deduction in the amount of $ 17,656 on account of his agreement to provide the college expenses of his adult son, which were paid after decedent's death; and (7) whether decedent's estate was entitled to a deduction for decedent's agreement to provide for said son's medical insurance expenses, in the amount of $ 5,349 which were paid after decedent's death. FINDINGS OF FACT James H. Waters, Jr. (hereinafter James or *185 decedent), died testate in Nash County, North Carolina, on July 3, 1988. At the time of his death, decedent was 48 years of age and a lifelong resident of the State of North Carolina. Decedent was then unmarried, having been divorced from his former wife Barbara S. Waters (hereinafter Barbara or former wife). Petitioner herein is decedent's estate, a resident of North Carolina, acting by and through William Roger Waters and John B. McMillan, coexecutors. Rule 60(a)(1). [1]
A Federal estate tax return for decedent's estate was filed on October 3, 1989, showing a gross estate of $ 5,681,720.15, a taxable estate of $ 4,521,345.34, and a tax liability of $ 1,596,749.26. Respondent timely mailed a statutory notice of deficiency to decedent's estate, petitioner herein, determining a deficiency of Federal estate *186 tax in the amount of $ 399,519. At the time of his death, decedent was employed as an officer of Boddie-Noell Enterprises, Inc. (hereinafter Boddie-Noell), of Rocky Mount, North Carolina, and was a participant in the Boddie-Noell Enterprises, Inc. Savings and Retirement Plan (hereinafter the savings and retirement plan), as well as the company's deferred compensation plan. Decedent and Barbara, his former wife, were married in 1961. At the time of their marriage, decedent and his former wife had no net worth, and substantially all the assets acquired during their marriage came from income earned by decedent. Two children were born of this marriage: Jeanette, born in 1966, and James III, born in 1969. At the time of decedent's death, Jeanette was 22 years old and had graduated from college, whereas James III was 18 years old and had graduated from high school. At the time the settlement agreement (hereinafter discussed) between decedent and Barbara was executed, Jeanette was attending college, and decedent had paid her college expenses. At that time, Jeanette was covered under decedent's health insurance policy with his employer, Boddie-Noell, but at the time of decedent's death, *187 Jeanette had ceased to be eligible for such coverage. Decedent and Barbara separated on April 1, 1981, and thereafter lived apart from one another. In November 1983, Barbara brought an action against decedent in North Carolina, seeking a divorce a mensa et thoro. In January 1984, James filed an answer and counterclaim in this suit. On August 1, 1984, the marriage of decedent and Barbara was dissolved a vinculo by a decree of the North Carolina courts. In both the former wife's action for divorce, as well as decedent's counterclaim, the respective parties invoked the applicability of North Carolina's equitable distribution statute, North Carolina General Statutes (hereinafter GS) sections 50-20 and 50-21 (1987), asking the North Carolina court to make an equitable distribution of the marital property pursuant to those statutory sections. Nevertheless, in the final divorce decree as issued, the North Carolina court retained for further action the issues of permanent alimony, child support, attorney's fees, and equitable distribution of property, making no resolution of such issues in the divorce decree; nor was a resolution of such issues ever incorporated in the divorce decree. *188 From August 1983 through April 1987, decedent and his former wife, through their respective attorneys, periodically engaged in settlement negotiations relating to alimony, child support, and division of their property. The settlement negotiations between decedent and his former wife were adversarial in nature, and the settlement agreement constituted a bona fide arm's-length transaction. At the culmination of the aforesaid negotiations, on April 28, 1987, decedent and his former wife entered into an agreement entitled "Support and Property Settlement" (hereinafter the settlement agreement). The matter of the division of property between decedent and his former wife is evidenced in this case solely by the settlement agreement. The settlement agreement provided by its terms that it was not to be incorporated into the August 1984 divorce decree and, in fact, it was never so incorporated. The settlement agreement was never presented to the court for approval and ratification, and does not appear to have become part of the record in the divorce case. The settlement agreement was never amended or modified by decedent and his former wife. In 1986, while settlement negotiations were *189 going on, decedent's former wife became concerned about what would happen if decedent were to die before their separation agreement was finalized, so far as the support of herself and her children was concerned. Decedent then owned a policy of life insurance in the amount of $ 200,000, issued to decedent in 1983 by the Southwestern Life Insurance Co. On April 3, 1986, decedent transferred ownership of said policy to his former wife. The transfer of said policy to decedent's former wife was not mentioned in the settlement agreement entered into by decedent and his former wife in 1987. In the settlement agreement entered into by decedent and his former wife, the parties thereto confirmed their "separation and divorce" and agreed "to make agreements in connection therewith, including the settlement and adjustment of their property rights and other rights, responsibilities and obligations growing out of their marital relationship." Accordingly, the settlement agreement of 1987 provided in pertinent part as follows: 3. RELEASE OF PROPERTY AND ESTATE RIGHTS. Except as otherwise provided herein, each party hereby waives, relinquishes, renounces and quitclaims unto the other any *190 and all rights, title, interest and control he or she may now have or shall hereafter acquire under the present or future laws of any jurisdictions, in, to and over the person, property or estate of the other, arising by reason of their prior marital relationship * * * * * * 8. SUPPORT AND MAINTENANCE. A. Husband shall pay to the Wife the sum of Four Thousand and 00/100 ($ 4,000.00) Dollars per month for the support and maintenance of the Wife and minor child * * *. Said support will continue until the occurrence of any one of the following: 1) The death of Wife; 2) The remarriage of the Wife; or 3) The death of the Husband. * * * This provision is intended to be non-modifiable, and hence this Agreement shall not be incorporated into the decree of divorce entered August 1, 1984, in the District Court of Nash County. * * * C. The Husband agrees to maintain and keep in force a policy of medical insurance and hospitalization insurance equivalent to the coverage in amounts now carried by him and as a result of his employment with Boddie-Noell Enterprises, Inc. The aforesaid policy, or its successor equivalent, shall provide insurance coverage and benefits to each child of the parties, so long as each child qualifies for coverage thereunder. Husband will be responsible for any extraordinary medical, surgical, dental or other expense in connection with the children's mental and physical health which is not covered by insurance. Husband will pay these expenses for each child until he or she graduates from college, or reaches age twenty-two (22) whichever last occurs. However, in no event shall Husband's obligation under this paragraph 8(c) continue after any child has reached the age of twenty-five (25) years. * * * *191 * * * 10. INSURANCE. Included in the Husband's life insurance coverage is Aetna group life policy 392 656-10-001 which policy has a face amount in excess of Two Hundred and Seventy Thousand and 00/100 ($ 270,000.00) Dollars. Husband is the assignee of this policy and shall designate the beneficiary in such a manner that in the event of the death of the Husband, the proceeds of this policy will be placed in a testamentary trust under the direction of trustees to be named by Husband in appropriate trust documents. Two Hundred and Seventy Thousand and 00/100) Dollars of the proceeds of said policy shall be held in a separate *192 trust and disbursed to Wife, principle [sic] and interest at the rate of Four Thousand and 00/100 ($ 4,000.00) Dollars per month, with the remainder to be to be divided equally between the children upon the death of the Wife. * * * 11. CHILDREN'S HIGHER EDUCATION. The parties agree that each of their children should attend a college or university. The Husband will bear the cost of a four year college education for each of the children, including tuition, room, board, books, and associated fees and costs. 12. PROPERTY SETTLEMENT. In full settlement of all the property rights and for the purpose of dividing their marital property consistent with and pursuant to North Carolina General Statutes Section 50-20 et. seq., and further acknowledging that a species of common ownership exists for their jointly owned property, the parties hereby divide their property and agree as follows: * * * C. STOCKS AND INVESTMENTS. * * * * * * (2) * * * In consideration for the Husband retaining sole ownership of the shares of Hardee's of Bishopville, Inc., the Husband will pay to the Wife ten (10) annual payments of Ten Thousand and 00/100 ($ 10,000) Dollars on or before *193 July 31 of each year commencing in 1988. Upon the conclusion of the tenth annual payment, the Husband will pay to the Wife on or before July 31 of the following year (1998) the sum of One Hundred Twenty Thousand and 00/100 ($ 120,000.00) Dollars as a lump sum. These payments are in no way intended to be, and should not be construed to be periodic payments of support and maintenance or alimony, but are a transfer of property incident to divorce as defined in IRC Section 1041(a). * * * Prior to the death of the Husband and until the conclusion of the payments to Wife set forth herein, the Wife's marital interest in the Hardee's of Bishopville, Inc. stock will constitute a lien on said stock. The Wife shall hold the aforesaid stock in escrow, as security for a non-interest bearing promissory note made by Husband to Wife in the gross amount of Two Hundred Twenty Thousand and 00/100 ($ 220,000.00) Dollars payable at the rate to Ten Thousand and 00/100 ($ 10,000.00) Dollars per annum and a final payment of One Hundred Twenty Thousand and 00/100 ($ 120,000.00) Dollars as set forth herein. * * * * * * E. RETIREMENT RIGHTS. (1) The husband has a deferred compensation agreement *194 with his employer, Boddie-Noell, Inc. which is set out in an agreement dated December 3, 1979. Wife will be entitled to one-half (1/2) of the value of the Husband's benefits of Two Hundred Fifty Thousand and 00/100 ($ 250,000.00) Dollars making Wife's share equal to the sum total of One Hundred Twenty-Five Thousand and 00/100 ($ 125,000.00) Dollars. Upon the retirement of the Husband or sooner termination of the aforesaid plan, whether voluntary or involuntary, the Wife will receive fifty (50%) percent of that portion of the Husband's monthly annuity as relates to Wife's marital interest in said plan (One Hundred Twenty-Five Thousand and 00/100 ($ 125,000.00) Dollars) as a distributive award of marital property. The Wife will continue to receive one-half (1/2) of that portion of Husband's monthly annuity as relates to Wife's marital interest in said plan until she has received the entire One Hundred Twenty-Five Thousand and 00/100 ($ 125,000.00) Dollars. Thereafter all payments will cease. In the event the Husband receives a lump sum distribution in lieu of the annuity, the Wife will be entitled to fifty (50%) percent of the amount received by Husband. The death benefit contained *195 in Husband's Deferred Compensation Plan referred to in this Paragraph 12E is guaranteed by an Equitable Life Insurance Company policy in the face amount of Two Hundred Fifty Thousand and 00/100 ($ 250,000.00) Dollars. The Husband shall maintain in full force and effect said life insurance policy, the death benefits of which are payable to Husband's estate. In the event of the death of the Husband prior to Wife receiving the total amount due her under this Paragraph 12E, the Wife shall be entitled to receive benefits from this policy only to the remaining balance due. The Husband shall insure that the premiums on said policy are paid and provide Wife annually evidence that it remains in full force and effect. The Husband shall not encumber, or impair the value of the aforesaid policy. Upon completion of all payments pursuant to this Paragraph, the Husband may redesignate the beneficiaries of the aforesaid policy at his discretion. The payments to be made to Wife pursuant to this Paragraph are an equitable distribution of marital property, and are not support and maintenance for the Wife or minor child. * * * (2) At the time of separation, Husband had a vested interest in *196 the Boddie-Noell Enterprises, Inc. Savings and Employee Retirement Plan. * * * Wife will be entitled to one-half (1/2) of the value of Husband's benefits as they existed on the date of the separation of the parties and subsequent to the execution of this Agreement, Wife's attorney will present a Qualified Domestic Relations Order to the Boddie-Noell Enterprises, Inc. Savings and Employee Plan Administration directing that she receive one-half (1/2) of the amount of Husband's vested interest in said plan as of the date of their separation. * * * 13. WAIVER OF EQUITABLE DISTRIBUTION. The parties acknowledge that a mutually satisfactory division has been made between them of all assets heretofore acquired by either of them. Hereafter, each party shall own, free of any claim, including the right to equitable distribution under the applicable North Carolina General Statute all items of property of every kind which are now held or which may hereafter be acquired by either of them * * *. * * * the parties waive the right either may have to equitable distribution. * * * 14. PROPERTY OWNERSHIP. All items of property now owned or hereafter acquired by either of the parties *197 shall be owned, held and enjoyed by them independently of any claim or right of the other with the full power to dispose of the same. The parties agree to execute any and all papers and instruments in writing, if, as and when such execution shall be necessary in order to effectuate express provisions of this agreement. Boddie-Noell owned an insurance policy issued by the Equitable Life Insurance Society of the United States, which policy insured decedent's life for a face amount of $ 250,000, and was maintained for the purpose of funding the deferred compensation obligation to decedent of Boddie-Noell referred to in the settlement agreement quotation given above. Boddie-Noell received the proceeds of said policy after decedent's death by check dated in 1989; it paid $ 125,000 to decedent's former wife, by check dated March 15, 1989, and the corporation paid $ 125,000 to decedent's estate, such payments adding up to the total face amount of the policy of $ 250,000. On decedent's estate tax return, $ 125,000 was included in the gross estate as the value of decedent's interest in his deferred compensation agreement. In the statutory notice of deficiency herein, respondent determined *198 that $ 250,000 was the value of decedent's interest which was includable in his gross estate. As to decedent's interest in the Boddie-Noell savings and retirement plan, the corporation paid $ 12,869.13 to decedent's former wife and paid $ 193,475.87 to decedent's estate, with respect to said rights. On decedent's estate tax return, $ 191,794 of value was reported. Petitioner has now conceded that in addition to the $ 191,794 so reported, the amount of $ 1,681.87 should be added thereto as representing decedent's interest therein. Respondent determined that the additional $ 12,869.13 paid to Barbara was also includable in decedent's gross estate. Immediately after decedent and his former wife entered into the separation agreement mentioned above, they executed two documents on April 28, 1987, called "Consent Qualified Domestic Relation Orders". These documents related to articles 12.E.(1) and (2) of the settlement agreement hereinabove. Such papers, apparently signed by decedent and his former wife but not attested, were forwarded in May 1987 to the North Carolina State court judge having jurisdiction over the divorce case of decedent and his former wife, and were signed by *199 him sometime thereafter. Neither of such purported orders was filed with the clerk of the court of the Nash County District Court, the court having jurisdiction over the divorce case of decedent and his former wife, nor was entered in the record of the divorce action. Said consent orders were intended to implement, and not change in any way, the terms of articles 12.E.(l) and 12.E.(2) of the settlement agreement, quoted above herein. Neither of such consent agreements purported to modify, but only to amplify, the terms of decedent's deferred compensation agreement with Boddie-Noell and the terms of the Boddie-Noell savings and retirement plan, as they related to the payment of benefits thereunder in the event of decedent's death prior to reaching retirement age. In October 1988, decedent's estate paid decedent's former wife $ 10,000 of the $ 220,000 under decedent's note (as mentioned in the separation agreement, see article 12.C.(2)) payable to his former wife, and held by her as security for certain payments, and on March 14, 1989, decedent's estate paid his former wife the remaining $ 210,000 on the note. In the estate tax return filed herein, decedent's estate claimed a deduction *200 in the amount of $ 220,000 with respect thereto as being a debt owed by decedent. In the statutory notice of deficiency herein, respondent determined that the deduction was not allowable because no consideration had been given therefor. In article 10 of the separation agreement quoted above herein, it was stated that from an Aetna life insurance policy in excess of $ 270,000, of which decedent was the beneficiary, an insurance trust for the benefit of the former wife would be provided in the amount of $ 270,000, and further the distributions to the former wife would be made, principal and interest, at the rate of $ 4,000 per month, with the remainder to be divided equally between decedent's children upon the death of the (former) wife. The trust provided thereunder paid decedent's former wife $ 16,000 in October 1988 and as of the time of trial herein, September 36, 1993, had paid a total of $ 252,000 to her. The amount of $ 270,000 was deducted on decedent's estate tax return as being a debt of decedent. Respondent disallowed said claimed deduction and added the proceeds of the policy to decedent's gross estate. In the estate tax return, a deduction in the amount of $ 17,656 *201 was claimed on account of the estimated expenses at college of decedent's son, James III. Since decedent's death, such amount has in fact been paid by the estate. In the Federal estate tax return, a deduction in the amount of $ 5,349 was claimed as a debt of the estate, on account of health insurance to be provided to decedent's son, James III. The amount of such deduction was an estimate, but such amount has in fact been paid by decedent's estate subsequent to decedent's death. In the statutory notice of deficiency, respondent determined that said deduction was not allowable. No amount was included in decedent's gross estate, in the return as filed, on account of the life insurance policy of $ 200,000 issued to decedent in 1983 and transferred to his former wife in 1986. In the statutory notice of deficiency herein, respondent determined that such insurance proceeds were includable in decedent's taxable estate. OPINION I. Application of the Equitable Distribution Regime UnderNorth Carolina Law
In 1981, the North Carolina General Assembly enacted sections 50-20 and 50-21 of the General Statutes, which have been described as a remedial statute enacted to ensure a distribution *202 in divorce of marital assets fairer than under common law rules. See Wade v. Wade, 72 N.C. App. 372, 325 S.E.2d 260 (1985). Although it is unnecessary and too lengthy in this opinion to quote that statute in full, pertinent provisions may be reproduced or summarized as follows: Sec. 50-20. Distribution by court of marital property upon divorce. (a) Upon application of a party, the court shall determine what is the marital property and shall provide for an equitable distribution of the marital property between the parties in accordance with the provisions of this section. (b) [Defines what constitutes marital property and nonmarital property.] (c) [Provides for an equal or equitable division of marital property by the divorce court.] (d) Before, during or after marriage the parties may by written agreement * * * provide for distribution of the marital property in a manner deemed by the parties to be equitable and the agreement shall be binding on the parties. * * * (j) In any order for the distribution of property made pursuant to this section, the court shall make written findings of fact that support the determination that *203 the marital property has been equitably divided. (k) The rights of the parties to an equitable distribution of marital property are a species of common ownership, the rights of the respective parties vesting at the time of the parties' separation. * * * [N.C. Gen. Stat. sec. 50-20 (1987).] Based upon this statute, and relying upon certain statements made in the separation agreement which was entered into by decedent and his former spouse, portions of which have been quoted above herein in the findings of fact, petitioner claims that decedent and his former spouse had a "species of common ownership" in the assets of their marriage, which was sufficient to give decedent's former wife such a degree of ownership in their assets that the disposition of property and property rights under their separation agreement should be considered as being supported by full and adequate consideration for Federal estate tax purposes. That is to say, petitioner argues that under the North Carolina equitable distribution regime which petitioner claims applies in this case, the former wife gave up property interests and rights which she owned at that time, so as to support the claim that she gave *204 full and adequate consideration for what she got under the settlement agreement, within the meanings of sections 2035, 2043, 2053, and 2516. We turn to a consideration of petitioner's claim that decedent's former wife owned property interests in decedent's property which would constitute full and adequate consideration for the transfers which decedent made, or so as to qualify claimed deductions as decedent's debts. We note first that the North Carolina General Statute quoted above, if the language of GS section 50-20(k) is parsed carefully, does not purport to create any property rights in particular property in favor of a spouse in a divorce action; it only creates the right (which is to be treated as a commonly owned right by the spouses) to demand equitable distribution of the marital property by the judge in the divorce action, as and when the judge determines what that property is. Hagler v. Hagler, 319 N.C. 287, 354 S.E.2d 228 (1987); Wilson v. Wilson, 73 N.C. App. 96, 325 S.E.2d 668 (1985). Thus, in the absence of an equitable distribution under N.C.G.S. section 50-20, the *205 state of the title of property owned by either spouse or both spouses is unaffected. Nothing in the act creates a new form of ownership such as that recognized in "community property" states. * * * [Hagler v. Hagler, 319 N.C. at 289, 354 S.E.2d at 232.] Under North Carolina law, for the regime of equitable distribution to apply, a party to the divorce action must apply to the court for it, GS sec. 50-20(a), and the court, having made written findings to support equitable distribution, GS sec. 50-20(j), must then itself make the equitable distribution, GS sec. 50-20(a). Willis v. Willis, 85 N.C. App. 708, 355 S.E.2d 828 (1987), revd. in part 86 N.C. App. 546, 358 S.E.2d 571 (1987). Further, if the parties provide by written agreement for the distribution of their property, such agreement shall be binding, GS sec. 50-20(d). Finally, a valid separation agreement fully disposing of the parties' property rights is a bar to further equitable distribution. Hartman v. Hartman, 80 N.C. App. 452, 343 S.E.2d 11 (1986); *206 Blount v. Blount, 72 N.C. App. 193, 323 S.E.2d 738 (1984). What happened in the instant case? Decedent's former wife started out by asking for equitable distribution in the divorce action. In his counterclaim, decedent agreed. Then they apparently had a change of mind. In the final separation agreement, after the divorce decree, which was silent, the parties specifically stated that they had satisfactorily divided their property, and they waived equitable distribution. Thus, GS section 50-20 was not satisfied: although originally asked for, the North Carolina divorce court made no findings of any equitable ownership of property and did not make any mention of a property division in its decree of divorce, then or later; and besides, the parties waived it. We must hold that the right to equitable distribution in the Waters divorce action, although originally requested, was never carried out by the court, but was waived by the parties, thereby negating the application of equitable distribution under North Carolina law. Hartman v. Hartman, supra.
Since we hold that equitable distribution *207 in decedent's divorce case never took place because: (a) The divorce court never found the necessary facts and decreed equitable distribution as GS section 50-20 commands; and (b) the parties to the divorce waived the application of GS section 50-20, as they were entitled to do, GS sec. 50-20(d), we need not give further consideration to petitioner's arguments on the scope and application of the equitable distribution system under North Carolina law. The ownership of property, for Federal estate tax purposes, is determined by the law of decedent's domicile, here, North Carolina, Poe v. Seaborn, 282 U.S. 101 (1930); but Federal law decrees how such property interests shall be taxed, no matter what name is given to the interest or right by State law, Morgan v. Commissioner, 309 U.S. 78 (1940). Since we hold that the equitable division regime of property distribution under North Carolina law was not applicable, but that the traditional common law rules of property law apply, as modified by North Carolina statute, e.g., GS secs. 52-1, 52-4 (1991); see Johnson v. Johnson, 317 N.C. 437, 346 S.E.2d 430 (1986); *208 Scholtens v. Scholtens, 230 N.C. 149, 52 S.E.2d 350 (1949), we turn to the applicable Internal Revenue Code estate tax provisions. II. The $ 200,000 Life Insurance Policy
The parties agree that, on April 3, 1986, after the August 1, 1984, divorce of decedent and his former spouse, but prior to decedent's death on July 3, 1988, decedent transferred ownership in a life insurance policy in the amount of $ 200,000, with the Southwestern Life Insurance Co., from himself to the ownership of his former wife. The record is silent as to who paid the premiums on this policy before or after ownership was transferred to Barbara, and we also do not know who was made the beneficiary of the policy. This life insurance policy was not referred to in the property settlement agreement entered into by decedent and his former wife in 1987. The testimony of decedent's then attorney and the then attorney for his former wife, which was given at this trial, sheds little light on the matter. The thrust of their testimony was that decedent's former wife was concerned that decedent might die before their property settlement agreement was finally consummated, *209 and that such an event would leave her without adequate support. That might well be true, but it provides no support for any argument by petitioner that there was any discernible consideration given for the transfer of this insurance policy to Barbara. It was done about a year before the final property settlement agreement of the former spouses was entered into, and it was not mentioned in that property settlement agreement. We have no basis on this record for drawing any firm conclusion that this transfer entered into the bargaining which resulted in the property settlement agreement of 1987 (although it might have), or that any other recognizable consideration was given therefor. There is nothing in this record that gives us any link between the transfer of this insurance policy and the property settlement agreement which was finally worked out. Although the general rule of section 2035(a) -- that transfers of property within 3 years of death shall be presumed to be in contemplation of death and includable in the estate -- was modified by section 2035(d)(1), so as to eliminate in general the 3-year rule of includability for estates of decedents dying after December 31, 1981, *210 section 2035(d)(2) provides an exception to that exclusion. Paragraph (2) of section 2035(d) clearly provides that the exclusion of the "3-year rule" for such decedents does not apply "to a transfer of an interest in property which is included in the value of the gross estate under section 2036, 2037, 2038, or 2042 or would have been included under any of such sections if such interest had been retained by the decedent." In this case, the Southwestern Life Insurance Co. policy clearly would have been includable in decedent's gross estate under section 2042 if he had died owning it. For a decedent such as James Waters, who died in 1988, the value of this insurance policy would have been includable in his estate if he had not transferred it to his former wife. He did so, but did it within 3 years of his death, in 1986. Accordingly, we must hold that the proceeds are includable in his taxable estate under section 2035(a). III. Includability and Deductibility for Estate Tax Purposes
For estate tax purposes, the general rule of includability is stated very simply in section 2033, which provides that "The value of the gross estate shall include the value of all property to *211 the extent of the interest therein of the decedent at the time of his death." We must examine the various claims which were made as to the particular items in dispute here, with that basic consideration in mind. A. Decedent's Deferred Compensation Agreement and His Retirement Plan
So far as the largely stipulated facts in this case show, decedent had rights as an officer-employee in the deferred compensation plan provided to employees by Boddie-Noell. In the separation agreement which decedent and his former wife entered into, of which we have quoted relevant portions in our findings of fact above, decedent agreed that his former wife would be entitled to one-half the value of his benefits of $ 250,000; that upon decedent's retirement the former wife would receive 50 percent of decedent's monthly annuity provided for in the plan, up to $ 125,000; and that when such amount had been paid to the former wife, including payments both before and after decedent's death, all further payments would cease. We do not know whether any formal change was ever made in the Boddie-Noell deferred compensation plan so as to give effect to this separation agreement between decedent and his *212 former wife, but we must conclude that it was not done because, upon decedent's death, the full $ 250,000 of benefits was received by Boddie-Noell under the terms of the plan. In turn, that corporation, apparently honoring the agreement which decedent and his former wife had made, paid $ 125,000 to decedent's estate and $ 125,000 to Barbara. Likewise, in the case of decedent's vested interest in the Boddie-Noell savings and retirement plan, decedent and his former wife agreed in the separation agreement that Barbara would be entitled to one-half the value of decedent's benefits as they existed on the date husband and wife here separated. Once again, there was apparently no change in the term of the savings and employee retirement plan agreement with decedent's employer. After decedent's death, Boddie-Noell paid $ 12,869.13 to decedent's former wife, and paid $ 193,475.87 to decedent's estate. Petitioner now concedes that $ 193,475.87 is properly includable in decedent's gross estate, but contends that the sum paid after decedent's death to his former wife was not part of the gross estate. In both cases, however, it appears that no change was made to the formal plans with Boddie-Noell, *213 which defined decedent's right in the deferred compensation agreement and in the savings and retirement plan. There was simply an agreement between decedent and his former wife that changes for her benefit would be made. So far as matters stood at the time of decedent's death, decedent was the sole owner and beneficiary of record of an interest in both these plans, and they were includable in his gross estate under section 2033. If there is any basis to petitioner's position, it must be that the former wife had a claim to these plans which was deductible from decedent's gross estate under section 2053, which provides in relevant part: (a) GENERAL RULE. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts -- * * * (3) for claims against the estate, and (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, *214 under which the estate is being administered. * * * (c) LIMITATIONS. -- (1) LIMITATIONS APPLICABLE TO SUBSECTIONS (a) AND (b) -- (A) CONSIDERATION FOR CLAIMS. -- The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth * * *. Petitioner's main contention in this case is that the former wife had claims against decedent's deferred compensation agreement and against his savings and retirement plan in the amounts indicated as a result of the separation agreement entered into by decedent and his former wife subsequent to their divorce; that decedent's former wife gave full and adequate consideration for the claims which she acquired under this property settlement agreement because said agreement was executed under the regime of equitable distribution pursuant to the North Carolina statute, and that she should be considered to have an equal property right in the property which she allegedly gave up, as being a full and adequate consideration for *215 the property which she received. We have discussed in the first part of this opinion our conclusion that decedent's former wife had no property rights in any particular property under North Carolina law at the time of her divorce from decedent because the North Carolina regime of equitable property distribution, provided for in GS sections 50-20 to 50-22, although first invoked, was later abandoned by decedent and his former wife; that the divorce decree made no mention of property distribution under equitable distribution principles as North Carolina law requires, or anything else, and that decedent and his former wife specifically waived the application of the equitable distribution statutes under North Carolina law. This being so, it was incumbent upon petitioner to show that petitioner's former wife gave adequate and full consideration in money or money's worth for the rights which she acquired under the separation agreement in decedent's property, under ordinary principles of North Carolina law. The burden of proof was on petitioner. Rule 142(a). This petitioner has not done. We know of no principle of North Carolina property law which grants any spouse any specific property *216 interest in the property of the other spouse, absent agreement and prior to death, and petitioner has pointed us to none. GS sec. 52-1. Section 2043 provides: (a) IN GENERAL. -- If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent. (b) MARITAL RIGHTS NOT TREATED AS CONSIDERATION. -- (1) IN GENERAL. -- For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth". (2) EXCEPTION. -- For purposes of section 2053 (relating *217 to expenses, indebtedness, and taxes), a transfer of property which satisfies the requirements of paragraph (1) of section 2516 (relating to certain property settlements) shall be considered to be made for an adequate and full consideration in money or money's worth. Finally, section 2516 provides: Where husband or wife enter into a written agreement relative to their marital and property rights and divorce occurs within the 3-year period beginning on the date 1 year before such agreement is entered into (whether or not such agreement is approved by the divorce decree), any transfers of property or interests in property made pursuant to such agreement -- (1) to either spouse in settlement of his or her marital or property rights, or (2) to provide a reasonable allowance for the support of issue of the marriage during minority, shall be deemed to be transfers made for a full and adequate consideration in money or money's worth. Considering first the applicability of section 2516, referred to in section 2043(b)(2) quoted above, it will be noted that this provision appears in the gift tax provisions of chapter 12 of the Code, but is incorporated in part into the estate tax *218 provisions by specific reference in section 2043(b)(2). Nevertheless, it must be further noted that the provisions of section 2516 apply when the parties involved "enter into a written agreement relative to their marital and property rights and divorce occurs within the 3-year period beginning on the date 1 year before such agreement is entered into". In this case, the divorce in question occurred on August 9, 1984, whereas the property agreement involved here was not entered into by decedent and his former wife until April 28, 1987. Accordingly, it appears that the property settlement agreement between decedent and his former wife was entered into outside the statutory timeframe provided by section 2516, with the result that it can have no effect in this case, and petitioner is remitted to its usual burden of proof to show the necessary consideration. In any event, even if the facts in this case had been within the allowable timeframe of section 2516, the savings provisions of section 2516 would have related only to items of claimed indebtedness in this case, by specific language of section 2043(b)(2). The essence of petitioner's position herein, as argued on brief at considerable *219 length, may best be summarized by the following quotation from petitioner's reply brief: As petitioner has maintained throughout the course of these proceedings, these two obligations [referring to the Boddie- Noell Enterprises, Inc. deferred compensation agreement and retirement plan] (and also the other four deductions in question hereunder) [discussed hereinafter], although founded upon an agreement by the parties, were supported by adequate and full consideration and * * *section 2043 is inapplicable because either: (i) the action of the parties were more in the nature of a division of marital property by co-owners than a transfer by the decedent to his former wife in return for her release of dower or other marital rights, or (ii) under the principles of Glen * * *. Section 2043 (which provides that the release of marital rights can to no extent be considered to be consideration) is simply not applicable to a situation not relating to property settlements incident to divorce where the parties are acting at arm's length and in an adversarial manner. As to petitioner's first point above, the equitable division argument, we have already concluded that Barbara had no property *220 rights in specific property under the equitable division of assets regime of North Carolina law because those provisions were not applied by the divorce court in this case, but rather were specifically waived by decedent and his former wife. We further have concluded that, under the principles of ordinary North Carolina property law, the fact of the marriage of decedent and Barbara gave her no vested property rights in decedent's property, acquired either before their marriage or thereafter. GS sec. 52-1. Reinforcing this conclusion are the facts, which the parties have stipulated, that at the time of their marriage, decedent and his former wife had no net worth and that substantially all of the property acquired since their marriage was acquired by decedent through his employment, business, and investment activities. Thus, it must be that all the assets which the separation agreement purported to dispose of had to involve property which had been accumulated by decedent and which under ordinary North Carolina law would be considered his. GS sec. 52-1. As to petitioner's second point of argument -- that under the case of Estate of Glen v. Commissioner, 45 T.C. 323 (1966), *221 the provisions of section 2043 do not apply to this case because decedent and his former wife here were "acting at arm's length and in an adversarial manner" -- we think that the teachings of the Estate of Glen case are somewhat overstated by petitioner. In the first place, it strains the meaning of ordinary language to state that the release of dower, curtesy, and other marital rights in a divorce settlement agreement does not apply for Federal estate tax purposes, when the plain language of section 2043(b)(1) states: "For purposes of this chapter [chapter 12 of the Internal Revenue Code, the estate tax provisions], a relinquishment * * *shall not be considered to any extent a consideration 'in money or money's worth'." We cannot say that a statutory provision which is specifically made applicable to estate taxes by the Internal Revenue Code nevertheless does not apply in estate tax cases, albeit such provision has a saving clause, in section 2043(b)(2) which, for reasons we have explained, is not applicable in the instant case. We think that the teachings of Estate of Glen v. Commissioner, supra, are more instructive if we concentrate on *222 what the Court did in that case, rather than by considering selected extracts of the opinion. The facts of the Estate of Glen case were that the taxpayer and his former wife entered into a separation agreement, in which the wife's property rights were governed by Scottish law. Under that law, prior to divorce, the wife had a vested interest in one-third of the husband's personal property, and it was agreed that this amount was one-third of $ 1 million. Under Scottish law, the wife also had a life interest in one-third of her husband's real property, but the value of that property right was not established. In deciding the case, this Court said: If an agreement were not reached the husband would be faced with a liability to the divorced wife in an amount prescribed by the divorce court under the law of the jurisdiction granting the divorce. Hence, by entering into a settlement agreement he does truly receive consideration for what he gives up equivalent to the value of the release from what his liability would have been under local law. [Estate of Glen v. Commissioner, 45 T.C. at 335.] The Court in Estate of Glen thereupon considered *223 that the wife had provided consideration for the transfers to her in the amount of $ 333,333, as being the share of her husband's personal property which she owned at the time of the divorce. The Court refused to ascribe any value or consideration to the wife's interest in the husband's real property because the record did not establish any such value. What that means in this case is that, if Barbara could establish that she had any vested rights in decedent's property at the time the separation agreement was entered into, she might well establish some consideration for the transfers that were made here, and the obligations which were created, within the meaning of sections 2043 and 2053. On this record, however, we cannot come to that conclusion, and we cannot conclude that adequate and full consideration was proved in this case simply because decedent and his former wife "bargained at arm's length and in an adversarial manner". That might be true, but there still might be no consideration, and none was shown here. See and compare Estate of Brandon v. Commissioner, 828 F.2d 493, 499 (8th Cir. 1987), revg. 86 T.C. 327 (1986); *224 Estate of Carpenter v. Commissioner, T.C. Memo. 1994-108. Summarizing, the Court in Estate of Glen opined: we conclude that section 2043(b) should be limited in its application to the release of rights which accrue to a surviving spouse upon the decedent's death, i.e., dower, curtesy, or similar rights in the property or estate of a deceased spouse. Section 2043(b) is not applicable to the relinquishment of a presently enforceable claim to an outright portion of a spouse's property upon divorce.* * * [Estate of Glen v. Commissioner, 45 T.C. at 342.] In the instant case, it does not appear to us that decedent's former wife had any ownership in specific property of decedent at the time of divorce. She did have dower, curtesy, or equivalent rights in the event of decedent's death. GS secs. 29-4, 29-13, 29-14 (1984). That was what she gave up, and that is what section 2043(b) tells us is not to be considered as adequate consideration within the meaning of the estate tax laws. It follows that the full amount of decedent's deferred compensation agreement, in the amount of $ 250,000, and his interest in the retirement *225 and savings account of his employer, as determined by respondent, should be included in the gross estate, and that decedent's former spouse had no claim against these amounts which was supported by any adequate consideration. B. The So-Called Qualified Domestic Relations Orders
The facts which we have found indicate that shortly after decedent and his former wife entered into their separation and property settlement agreement, they both signed documents which were labeled as Qualified Domestic Relations Orders. Decedent's employer, Boddie-Noell, also signed the documents, and the North Carolina State court judge in the Waters divorce case signed them also without further comment. There was no form of attestation to these two documents, one of which purported to relate to decedent's rights under his deferred compensation agreement, and the other of which referred to his retirement and savings plan. Petitioner appears to argue that these documents became "orders" in the divorce case, and thus provided the necessary consideration for transferring a portion of these two plans to the former wife's ownership. It is undisputed, however, that the documents do not reveal when they *226 were signed by the State court judge, and the parties have stipulated that no original or copy of either of these "orders" was ever filed with the clerk's office of the North Carolina court having jurisdiction of the divorce action, or was made a part of that record in any other manner. Petitioner, relying on rule 58 of the North Carolina Rules of Civil Procedure, points out that both orders as well as judgments are covered by the rule. Petitioner then points to several North Carolina cases for the proposition that where a situation is not precisely governed by the rules, a rule of reason will prevail. We think that rule 58 of the North Carolina Rules of Civil Procedure does cover the instant situation. The rule as quoted by petitioner says in relevant part: In cases where judgment is not rendered in open court, entry of judgment for the purposes of these rules shall be deemed complete when an order for the entry of judgment is received by the clerk from the judge, the judgment is filed and the clerk mails notice of its filing to all parties.* * * What happened in this case was that these documents, whereas they may have been signed by the judge in some capacity, were never *227 given to the clerk, were never entered into the records of the court, and did not become a part of the record in the Waters divorce case. The reason for this failure to make these documents official court orders and part of the divorce case record may not be hard to find: the Waters separation and property settlement agreement itself was apparently never filed with the court, nor adopted by the court, nor made part of the record in the divorce case, so that filing the documents in question as an amendment to said property settlement agreement would have made little sense since it would relate to nothing that was in the record. Other than as a possible side agreement between the parties, we cannot see that these documents had any force at all. Although these documents might at most be considered an attempt by decedent and his former wife to modify or supplement their separation and property settlement agreement, it would have to be questioned whether such documents were effective, since they were apparently not executed and attested under the strict requirements of the North Carolina statute, GS sec. 52-10.1 (1991). See Greene v. Greene, 77 N.C. App. 821, 336 S.E.2d 430 (1985). *228 Since the parties have agreed that the separation and property settlement agreement of decedent and his former wife, which is in evidence, was not amended in any way, and since we conclude that these documents labeled as Qualified Domestic Relations Orders were never entered into the record nor made part of the Waters divorce case in the North Carolina courts, we must conclude that they were ineffective for any purposes connected with the instant case. C. Deduction for the $ 220,000 Note
In the separation agreement which decedent and his former wife executed, it was recited that Barbara had a "marital interest" in the stock of Hardee's of Bishopville, Inc., which was owned by decedent. Acknowledging that decedent was the owner of the stock, the separation agreement nevertheless committed decedent to pay his former wife $ 10,000 a year for 10 years, together with a final lump-sum payment of $ 120,000 thereafter; and the agreement further provided that until such amounts were paid, Barbara would have a lien on this stock. In order to secure this obligation which decedent was undertaking, the separation agreement provided that he would give Barbara a promissory note for $ 220,000, *229 and this was apparently done. Shortly after decedent's death, $ 10,000 was paid to the former wife, and the remaining $ 210,000 was paid to her in 1989. Petitioner seeks an estate tax deduction of $ 220,000 for this under section 2053. We have previously discussed the nonapplicability of the equitable distribution provisions of North Carolina law in this case. We do not think that decedent's former wife acquired any property interest in decedent's stock in Hardee's of Bishopville, Inc., during decedent's life under North Carolina law. That being true, Barbara gave up nothing in order to get the $ 220,000 note, other than her marital rights to dower, curtesy, or the statutory equivalent, and these are not to be considered as consideration for giving the promissory note by the express provisions of section 2043(b)(1). Petitioner has not offered any other evidence of any consideration which decedent's former wife gave in order to get this $ 220,000 promissory note, and we must therefore hold that, the note being unsupported by any adequate consideration, a deduction therefor under section 2053 is not allowable. D. The Insurance Trust
The separation agreement between decedent *230 and his former wife recited that decedent was the assignee of an Aetna group life insurance policy with a value in excess of $ 270,000. The separation agreement provided that decedent would establish an insurance trust, under which $ 270,000 of the proceeds of this policy would be paid to Barbara, principal and interest, at the rate of $ 4,000 a month, with any remainder to be divided equally between decedent's children in the event of Barbara's death. Based on this agreement, the amount of $ 270,000 was deducted as a debt of decedent in the estate tax return, although the full face amount of the policy, in the amount of $ 320,000, was reported as insurance in decedent's taxable estate. Respondent accepted the reporting of insurance as an asset of the estate, but disallowed the deduction for $ 270,000 as a debt of decedent. We must uphold respondent's determination of disallowance. Decedent's former wife acquired no ownership of the life insurance policy by reason of her marriage to decedent, and she had no property rights therein under the equitable distribution regime of North Carolina property law, as we have discussed. Thus, aside from the release of marital rights, etc., *231 it does not appear that Barbara gave any consideration which would support a deduction under section 2053 based upon an alleged obligation to provide a life insurance trust of $ 270,000 for Barbara's benefit. E. Health and Education Benefits for Decedent's Son
The separation agreement between decedent and his former wife provided two things inter alia: (1) Decedent would provide medical insurance for his son James III, and would also be responsible for the medical expenses of James III, for a period which would expire when the son graduated from college or reached age 22, whichever occurred last; and (2) decedent promised to provide a 4-year college education for each of his children, including James III. In decedent's estate tax return, a deduction of $ 5,349 as a debt of the estate was claimed on behalf of decedent for health insurance which at the time of death was estimated, but in fact by the time of trial herein had been paid subsequent to decedent's death. Likewise, in the estate tax return, a deduction of $ 17,656 was claimed on account of the estimated college expenses of James III. In fact, the estate has paid such expenses. Respondent disallowed both deductions. *232 Here again, we must sustain respondent's determinations on the grounds that simply no substantiation of consideration in money or money's worth has been provided for claiming these deductions, pursuant to the requirements of section 2053(c)(1)(A). There is no showing that decedent's former wife parted with anything in return for decedent's commitment to bear these expenses, nor is there any suggestion that James III or anyone else did so. All that we can see in this case is an attempt to make estate tax deductions out of the voluntary provisions that a person would reasonably make for his child, which may be a laudable obligation that decedent undertook, but, not being supported by any consideration, will not stand up as deductions for Federal estate tax purposes. [2]
*233 Petitioner having stipulated that all other items of adjustment in respondent's statutory notice of deficiency are correct, except those which have been treated herein, Decision will be entered for respondent. Footnotes
1. All statutory references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. If it be argued that decedent undertook these obligations to pay the medical and college expenses of James III in consideration of the satisfaction and release of his parental obligations of support, we must point out: (a) It is axiomatic, we think, that the legal obligations of a decedent for estate tax purposes are to be determined at the time of his death. In this case, at the time of decedent's death, it is stipulated that James III had finished high school and was 18 years old, and these estimated college and medical expenses had not been incurred. Under North Carolina law, the parental obligation of support ends at age 18, when the child ceases to be a minor, unless it is shown that the child is insolvent, unmarried, and physically or mentally incapable of earning a livelihood. GS sec. 48A-2 (1984); Nolan v. Nolan, 20 N.C. App. 550, 202 S.E.2d 344 (1974). No such showing was made or suggested here. (b) It is true that a parent in North Carolina can contract to support a child after majority and the courts will enforce such a contract in proper cases. Harding v. Harding, 29 N.C. App. 633, 225 S.E.2d 590 (1976); Carpenter v. Carpenter, 25 N.C. App. 235, 212 S.E.2d 911↩ (1975). The amount of consideration which would have to be shown to enforce such a contract in the State courts may not be clear, but for estate tax purposes, the requirement that there be "adequate and full consideration in money or money's worth" is clear, sec. 2035(c)(1)(A), and the only consideration which petitioner has pointed us to here, in a general sort of way, is the alleged satisfaction of decedent's obligation of support. As we have seen, that obligation terminated when James III reached 18; no other consideration has been shown; and sec. 2043(b)(1) tells us not to consider it as consideration anyhow.