[Sac. No. 7437.   In Bank.   Dec. 13, 1962.]

JOSEPH IMBACH, Plaintiff and Appellant, v. JACK
SCHULTZ et al., Defendants and Respondents.

Hoseit & Luther and Max H. Hoseit for Plaintiff and Appellant.

Sidney Rudy for Defendants and Respondents.

GIBSON, C. J.—Plaintiff, a real estate broker, brought this action to recover a commission which he alleges is due him under the terms of an agreement for the sale of a motel owned by defendants husband and wife. The trial court, sitting without a jury, found in favor of defendants. Plaintiff appeals, contending that the agreement was erroneously interpreted by the court on the basis of parol evidence.

The contract, a printed form with the blanks filled in by typewriting and with some changes made in ink, was entitled "Deposit Receipt" and stated that $15,000 was received from Cal Sierra Development Company "as a deposit and part payment" on the purchase of the motel for $550,000. The agreement provided that the balance of the purchase price was to be paid in a specified manner 200 days from the date of acceptance, that the amount of the deposit was to be released from escrow to defendants immediately, and that in the event Cal Sierra failed to pay the balance or to complete the purchase pursuant to the terms of the agreement, the amounts paid under it should be retained by defendants at their option as consideration for the execution of the agreement.

It was also agreed that the document expressed the entire contract of the parties, that there were no other understandings, oral or written, which in any manner altered or enlarged its terms, and that the broker would not be held responsible for the failure of the parties to abide by its terms. The following provision, subscribed by defendants, appeared on the reverse side of the document in print except for the italicized portions, which were inserted in ink, the words "on closing" being interlined: "I agree to sell the property described on the reverse side hereof on the terms and conditions therein stated *on closing* and agree to pay the agent named therein as commission / the sum of *Eighteen Thousand Five Hundred 18,500* Dollars, or one-half the deposit in case same is forfeited by purchaser."

Before the agreement was signed, it was carefully reviewed

in the office of defendants' attorney in the presence of plaintiff, defendant husband, and officers of Cal Sierra, and the attorney made the insertions in the provision quoted above. Defendants received the $15,000 referred to in the agreement. Cal Sierra did not pay the balance of the purchase price, and defendants retained the $15,000. They did not pay plaintiff any part of the money.

Over an objection by plaintiff based on the parol evidence rule, defendant husband testified that the attorney, at the meeting in his office, said the agreement ''could not be signed in the printed form and had to be corrected because no commission was to be paid unless the deal was closed'' and that the words ''on closing'' were then inserted in the provision relating to payment of commission.

The trial court found among other things that the words ''on closing'' were inserted ''after plaintiff was advised that the agreement could not be signed in its printed form because no commission was to be paid unless the transaction was closed'' and that plaintiff and defendants intended that no commission would be paid unless the sale of the property was completed.

The deposit receipt was clearly intended to be an integration, i.e., a final and complete expression of the agreement of the parties. Reformation of the writing is not sought by defendants, and they have not pleaded mistake as an affirmative defense but have taken the position throughout that under a correct interpretation of the agreement plaintiff is not entitled to recover. They do not rely in support of this position on the existence of any special usage (habitual or customary practice) of any group, or even of the parties themselves, with respect to the words used.

Although parol evidence is ordinarily admissible to explain the meaning of an agreement, it is not admissible when it is offered, as here, to give the terms of the agreement a meaning to which they are not reasonably susceptible, and this is especially true where the evidence consists of a declaration of a party as to what he intended the language of the specific document to mean. (See Rest., Contracts, § 230 and coms. a, b; id., § 235, cls. (a), (d) and coms. a, f; id., § 242 and com. 2; 4 Williston on Contracts (3d ed. 1961) § 610, pp. 499-503; id., § 610A, pp. 517-519; id., § 629, pp. 923 et seq.; 9 Wigmore on Evidence (3d ed. 1940) § 2471, pp. 229-230; Witkin, California Evidence, § 370, p. 412.)

The trial court obviously based its interpretation of the contract on the extrinsic evidence introduced by defend-

ants in regard to what was said by their attorney. Under the principles discussed above, that evidence, particularly since it related to a declaration of defendants through their attorney as to what their intention was, cannot be used to give the written agreement a meaning to which it is not reasonably susceptible.

The document cannot reasonably be construed in the manner urged by defendants and adopted by the trial court. The provision relating to payment of commission specifies the payment "on closing" of $18,500 "or" one-half the deposit in case of forfeiture. If the provision were construed as meaning that a commission was to be paid only in the event of a closing of the transaction, the clause regarding one-half of the deposit would be nullified. The operation of that clause was made dependent upon a forfeiture of the deposit, and that could occur only where there would be no closing pursuant to the agreement. Moreover, if a closing were made a controlling condition to payment of any commission, the clause with respect to one-half the deposit would be pointless since, upon closing, plaintiff would be entitled to a commission of $18,500 under the preceding clause of the contract. In order to give all the words of the agreement their usual and sensible meaning, the only reasonable construction is that the provision in question sets forth two independent and mutually exclusive alternatives, designed to operate in different circumstances, and that the purpose of the inserted words "on closing" was solely to clarify the first alternative. Without insertion of those words the first alternative would have been subject to the construction that plaintiff was to receive $18,500 even in the event that Cal Sierra did not comply with the agreement and defendants elected not to retain the deposit as a forfeiture. Under the only reasonable construction of the agreement after those words were inserted, plaintiff would be entitled to a commission of $18,500 if there was a closing or, in the alternative, to a commission without a closing in the amount of one-half the deposit in case of forfeiture.

We find no merit in a contention of defendants that, even if the agreement is contrued as entitling plaintiff to a commission without a closing in case of forfeiture of a deposit, the judgment for defendants must be sustained because, assertedly, the $15,000 retained by defendants was not a deposit on a purchase but was paid as consideration for an option to purchase. Under the contract Cal Sierra agreed "to purchase," and defendants agreed "to sell." The docu-

ment is entitled "Deposit Receipt," and it refers to the $15,000 as a "deposit" and as "part payment on the purchase." It does not mention an option to purchase but, to the contrary, requires that the balance of the purchase price be paid at a certain time. A provision relied on by defendants, namely, that in the event of noncompliance by Cal Sierra the amount paid is to be retained by defendants at their option "as consideration for execution of this agreement," is not inconsistent with treating the agreement as one of sale rather than one for an option to purchase, and it cannot reasonably be understood as indicating an option to purchase in view of the agreement as a whole. (Cf. *Caplan* v. *Schroeder*, 56 Cal.2d 515, 518-519 [15 Cal.Rptr. 145, 364 P.2d 321].)

The judgment is reversed with directions to the trial court to enter judgment for plaintiff.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and White, J.,* concurred.

*Assigned by Chairman of Judicial Council.