[S. F. No. 21303.   In Bank.   July 9, 1964.]

ROBERT A. NOFZIGER et al., Plaintiffs, Cross-defendants and Appellants, v. FRED J. HOLMAN et al., Defendants, Cross-complainants and Respondents.

Wexler & Wexler and Louis E. Wexler for Plaintiffs, Cross-defendants and Appellants.

Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Defendants, Cross-complainants and Respondents.

GIBSON, C. J.—The principal question presented on this appeal is whether the trial court erred in refusing to admit evidence to explain the meaning of a written contract. We have concluded that the evidence should have been admitted and that the judgment must be reversed.

Plaintiffs Nofziger and Rossi employed defendant Holman as foreman to supervise the construction of houses in a certain subdivision. The contract of employment provides in part that Holman shall receive a "minimum and guaranteed" wage equal to the regular carpenter's wage scale in the area for a workweek of 40 hours and, in addition, "one-fourth of the net profit from the sale of each home constructed in said subdivision under the supervision of Employee under the terms of this agreement." Net profit is defined in the agreement as the profit to the owners after deducting a sales commission and the direct and indirect cost of the house and lot. There are also provisions for payment of the one-fourth of the net profits at times to be mutually agreed upon by the parties, for inclusion within the agreement of houses previously constructed in the subdivision under Holman's supervision, and for termination of the agreement.

All 63 homes constructed in the subdivision were built under Holman's supervision, and 43 were sold at a profit and 20 at a loss. After completion of construction a dispute arose as to the method of calculating Holman's share of the profits.

At the trial testimony was offered by plaintiffs to show that the parties intended that Holman was to receive one-fourth of the net profit from the entire venture, including profitable and unprofitable houses, not one-fourth of the profits from the 43 houses sold at a profit without any deduction of the losses suffered on the 20 houses. The testimony, which was admitted subject to defendants' motion to strike, may be summarized as follows: Holman had worked on other proj-

ects with Nofziger where it was agreed that Holman was to receive a percentage of the profits, and in those transactions losses were deducted in the calculation of profits. In discussions with Holman it was said that he was to get one-fourth of the profits at the end of the year. Nofziger stated that ''we never thought about losses but it was assumed that he was sharing the losses'' and that ''if there weren't any profits, he wouldn't get any profits.'' In the tax returns for Nofziger and Rossi, which were prepared by an accountant, Holman's share of the profits was treated as an overhead expense, and the amount of his share was equal to an amount which would be one-fourth of the net profit of the entire subdivision after deduction of losses.

At the conclusion of the trial the court granted defendants' motion and struck all the above testimony. The court concluded that the employment agreement was not ambiguous and that under the agreement Holman was entitled to one-fourth of the net profit on the 43 homes sold at a profit without any deduction for the losses suffered on the other 20 homes.

■ When the language used in an agreement is fairly susceptible of two or more constructions, extrinsic evidence may be considered, not to vary or modify the terms of the agreement but to aid the court in ascertaining the true intent of the parties. (*Barham* v. *Barham* (1949) 33 Cal.2d 416, 422-423 [202 P.2d 289]; cf. *Imbach* v. *Schultz* (1962) 58 Cal.2d 858, 860 [27 Cal.Rptr. 160, 377 P.2d 272].) ■ The agreement does not expressly exclude from the computation of net profit homes constructed under Holman's supervision which were sold at a loss, and the term ''one-fourth of the net profit from the sale of each home constructed in said subdivision under the supervision of Employee'' is reasonably susceptible of the construction which plaintiffs seek to place upon it. Synonyms for the word ''each'' are ''every'' and ''all,'' and the three words when applied to members of a group imply inclusion of the entire membership and admit no exceptions. (Webster's Dictionary of Synonyms (1951 ed.) pp. 280, 39.) In discussing the relationship between the words, Webster's Dictionary of Synonyms also states, at page 39, that ''all'' implies consideration as a unit, that ''every'' is applied to any of the individuals comprising the group when regarded as the representative of the entire membership, and that ''each,'' unlike ''every,'' implies reference to a member as a distinct person or thing. Thus, ''each'' may have been

used in the contract, as defendants urge and the trial court found, to show that the net profit of the houses was to be determined on an individual basis and that only houses sold at a profit were to be included in the computation. However, the word may also have been used, as plaintiffs urge, to stress that the understanding was that there would be no exceptions and that no home built under Holman's supervision was to be excluded from the computation of net profit. Both of these constructions are consistent with the remaining provisions of the contract. Accordingly, extrinsic evidence was admissible to aid in determining the true intent of the parties, and the court erred in granting the motion to strike.

Whether there is any merit to an additional claim of error by plaintiffs will depend upon the record made on the retrial of the case.

The judgment is reversed.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.