CENTURY COMMUNICATIONS, INC. v. THE HOUSING AUTHORITY OF THE CITY OF WILSON AND SITE, INC.

No. 368PA84

(Filed 27 February 1985)

**Easements § 4.3; Eminent Domain § 2— easement for underground radio wires— sufficiency of lease provision—interference with easement—summary judgment improperly entered**

    A lease provision in which the lessors agreed not to interfere, by cultivation or otherwise, with wires of a radio ground system of plaintiff lessee's radio station radiating approximately 250 feet from the center of two radio towers on the leased property was so ambiguous that it could not be held as a matter of law that it did or did not create an easement in adjoining land owned by the lessors into which the radio wires extended. Furthermore, assuming that the lease provision did create an easement, material questions remained as to whether defendant Housing Authority's construction of buildings over portions of the radio wires extending into land defendant purchased from the lessors amounted to an interference with the wires within the meaning of the lease and, if so, whether this injured plaintiff. Therefore, the trial court erred in entering summary judgment in favor of plaintiff lessee on the issue of liability in an inverse condemnation action against defendant Housing Authority.

    Justices MEYER and VAUGHN did not participate in the consideration or decision of this case.

ON appeal of the decision of the Court of Appeals filed 5 June 1984, reported per Rule 30(e) of the North Carolina Rules of Appellate Procedure, and the decision filed 1 May 1984, reported at 68 N.C. App. 293, 314 S.E. 2d 749 (1984), affirming order granting partial summary judgment to plaintiff, entered by *Winberry, J.*, on 29 September 1982, in Superior Court, WILSON County. The case was dismissed as to the defendant Site, Inc. on 27 May 1982 and it is no longer a party to this action. Heard in this Court 12 December 1984 pursuant to The Housing Authority of the City of Wilson's petition for discretionary review granted by this Court on 28 August 1984.

*Kimzey, Smith, McMillan & Roten, by James M. Kimzey, for plaintiff appellee.*

*Manning, Fulton & Skinner, by Howard E. Manning, Jr. and Charles E. Nichols, Jr., for defendant appellant.*

MARTIN, Justice.

Prior to 1962 D. W. Woodard and his wife, Romaine C. Woodard, owned a tract of land (hereinafter "Woodard tract") located outside the city of Wilson. On 1 October 1962 the Woodards leased a portion of this tract to the Wilson Radio Company, Inc. On 22 December 1971 two new leases were executed between the successors of the Woodards' interest and Wilson Radio Company. These leases pertained to two adjoining parcels of land within the Woodard tract upon which were located two radio towers and buildings containing radio transmission facilities. These leases were assigned to Century Communications, Inc. ("Century"), plaintiff herein, on 1 January 1976. The leases and assignments were duly recorded. Plaintiff uses the facilities located on the land which is the subject of these leases for the purpose of operating two radio stations.

In April 1980 defendant, The Housing Authority of the City of Wilson ("Housing Authority"), purchased from the Woodards' successors in interest that part of the Woodard tract not leased to Century. The Housing Authority then proceeded to build a housing project on the land it thus acquired.

The dispute in the instant case centers upon underground wires emanating from the two radio transmission towers which are located on that part of the Woodard tract leased to plaintiff. Some of these wires extend beyond the boundaries of the land leased by Century into the land purchased in 1980 by the Housing Authority. By virtue of the following paragraph in one of the aforementioned 1971 leases, plaintiff claims that by constructing buildings over the wires, defendant inversely condemned a property interest plaintiff held therein:

> 6. The Lessors agree not to interfere with, — either by cultivation or otherwise —, wires of the present Radio ground system of Station WVOT, radiating approximately 250 feet from the center of the two Radio Towers.

Plaintiff sued defendant for inverse condemnation of private property, and summary judgment "as to the issue of liability" was entered for plaintiff upon the trial court's finding that "there is no genuine issue to [sic] any material fact relating to the liability of the Housing Authority of the City of Wilson for the taking of

private property for public use without just compensation." Defendant appealed this order to the Court of Appeals, which ruled that the physical presence of buildings over the wires is per se a taking because plaintiff cannot now reach the wires under the buildings. Upon rehearing the Court of Appeals amended its initial opinion by adding that "the plaintiff should be allowed to prove any damage it may properly show which was caused by the placing of buildings over the wires. We affirm our previous opinion in all other respects."

The issue before this Court is whether partial summary judgment was properly entered for plaintiff. Summary judgment is appropriate only if the pleadings and other materials before the trial judge show that there is no genuine issue of material fact and that any party is entitled to a judgment as a matter of law. *E.g., Connor Co. v. Spanish Inns*, 294 N.C. 661, 242 S.E. 2d 785 (1978); *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). We have determined that it was error for the trial court to have entered summary judgment, and we therefore reverse the decision of the Court of Appeals.

Plaintiff claims that paragraph six of the lease 'created an easement appurtenant for the benefit of Wilson Radio Company. The lessors also owned land adjoining the leased premises, and it is into this adjoining land that the radio wires extend. Defendant purchased this adjoining land in 1980. Plaintiff argues that the purported easement granted by the 1971 lease runs with the land, so that defendant, who purchased that part of the Woodard tract adjacent to the land leased by the radio station, is bound thereby. *See, e.g., Waldrop v. Brevard*, 233 N.C. 26, 62 S.E. 2d 512 (1950). When defendant constructed buildings over the radio wires, plaintiff argues, defendant in effect inversely condemned property rights plaintiff held by virtue of the grant of the easement.

In its answer defendant denies that paragraph six of the lease creates an easement. Upon examining this paragraph we find it so ambiguous that we are unable to hold as a matter of law that it does or does not create an easement. Generally, whether language in a written instrument creates an easement is to be determined by ascertaining the intention of the parties as gathered from the language of the instrument. *See Borders v. Yarbrough*, 237 N.C. 540, 75 S.E. 2d 541 (1953). However, if the

language is uncertain or ambiguous, the court may consider all the surrounding circumstances, including those existing when the document was drawn, those existing during the term of the instrument (if, as in the present lease, the instrument is limited in time), and the construction which the parties have placed on the language, so that the intention of the parties may be ascertained and given effect. *See Builders Supplies Co. v. Gainey*, 282 N.C. 261, 267, 192 S.E. 2d 449, 453 (1972) (intent of parties as disclosed by the conveyance, when read in the light of surrounding circumstances known to the parties, determines whether the conveyance is an easement or a profit a prendre); *Sergi v. Carew*, 18 N.J. Super. 307, 87 A. 2d 56 (1952) (factual surroundings as well as language of instrument taken into account in determining whether language created easement or estate in fee simple); *Dee v. King*, 77 Vt. 230, 238, 59 A. 839, 841-42 (1905) (language in deed which could have created either a personal covenant or an easement appurtenant "cannot be said to be unequivocal. We therefore look at the surrounding circumstances existing when the deed containing it was made, the situation of the parties, and the subject-matter of the instrument, and in the light thereof the clause should be construed according to the intent of the parties."); *Callan v. Hause*, 91 Minn. 270, 272, 97 N.W. 973, 974 (1904) ("The meaning of a reservation in a contract, when the language is indefinite, must be determined in every case by the particular facts—such as the character of the conveyance, the nature and situation of the property conveyed and of the property excepted, and the purpose of the exception."). *See generally* 25 Am. Jur. 2d *Easements* § 23 (1966 & Supp. 1984). As the Supreme Court of California stated:

> Although extrinsic evidence is not permitted in order to add to, detract from, or vary the terms of an integrated written agreement, extrinsic evidence is admissible in order to explain what those terms are. (*Masterson v. Sine* (1968) 68 A.C. 223, 226-227, 65 Cal. Rptr. 545, 436 P. 2d 561; *Nofziger v. Holman* (1964) 61 Cal. 2d 526, 528, 39 Cal. Rptr. 384, 393 P. 2d 696; see *Laux v. Freed, supra*, 53 Cal. 2d 512, 522, 527, 2 Cal. Rptr. 265, 348 P. 2d 873 (Traynor, J., concurring); Code Civ. Proc. §§ 1856, 1860; Civ. Code, § 1647; Rest., Contracts, §§ 230, coms. a, b, 235, cls. (a), (d), coms. a, f, 238, cl. (a), com. a, 242, com. a; 3 Corbin on Contracts (1960) §§ 535, 536, pp. 17-21, 27-30; 9 Wigmore, Evidence (3d ed. 1940) §§ 2461-2463,

2470 et seq.; Witkin, Cal. Evidence (2d ed. 1966) § 730, p. 675; Corbin, The Interpretation of Words and the Parol Evidence Rule (1965) 50 Cornell L.Q. 161, 164, 189-190; Farnsworth, "Meaning" in the Law of Contracts (1967) 76 Yale L.J. 939, 957-965; Holmes, The Theory of Legal Interpretation (1899) 12 Harv. L. Rev. 417.) Therefore, extrinsic evidence as to the circumstances under which a written instrument was made has been held to be admissible in ascertaining the parties' expressed intentions, subject to the limitation that extrinsic evidence is not admissible in order to give the terms of a written instrument a meaning of which they are not reasonably susceptible. (*Parsons v. Bristol Development Co.* (1965) 62 Cal. 2d 861, 865, 44 Cal. Rptr. 767, 402 P. 2d 839; *Nofziger v. Holman, supra; Coast Bank v. Minderhout* (1964) 61 Cal. 2d 311, 315, 38 Cal. Rptr. 505, 392 P. 2d 265; *Imbach v. Schultz* (1962) 58 Cal. 2d 858, 860, 27 Cal. Rptr. 160, 377 P. 2d 272; see Estate of Rule (1944) 25 Cal. 2d 1, 20-22, 152 P. 2d 1003, 155 A.L.R. 1319 (Traynor, J., dissenting).)

*Continental Baking Co. v. Katz*, 68 Cal. 2d 512, 521-22, 67 Cal. Rptr. 761, 767, 439 P. 2d 889, 895 (1968) (en banc). *Cf. Richard Paul, Inc. v. Union Improvement Co.*, 33 Del. Ch. 113, 91 A. 2d 49 (1952) (court looked to extrinsic evidence to determine scope of easement granted in a lease); *Burroughs v. Milligan*, 199 Md. 78, 85 A. 2d 775 (1952) (extrinsic evidence considered to determine scope of reservation of easement creating right-of-way). It is noteworthy that this Court has expressly approved the use of extrinsic evidence in cases where written instruments creating easements contain latent ambiguities with respect to the physical location of the easements. *E.g., Allen v. Duvall*, 311 N.C. 245, 316 S.E. 2d 267 (1984); *Oliver v. Ernul*, 277 N.C. 591, 178 S.E. 2d 393 (1971).

In the instant case the language of paragraph six is so uncertain and ambiguous that we are unable to say as a matter of law that it does or does not create an easement. Because it is not clear what rights, if any, this paragraph creates, it was error for the trial court to enter summary judgment "on the issue of liability" in favor of plaintiff. Before plaintiff can recover, it must show that the language of paragraph six does create an easement and that such easement is binding upon defendant. These are mixed

questions of fact and law to be determined by the jury from the evidence under appropriate instructions by the court.

Moreover, while it is undisputed that defendant did in fact construct buildings over the wires, and assuming arguendo that paragraph six creates an easement and that it is binding on defendant, we hold that there remain material issues of fact as to whether defendant's acts "interfere with . . . wires of the present Radio ground system of Station WVOT" as provided in paragraph six of the lease. One such issue concerns the scope of the purported easement. For example, while paragraph six states that the lessors will not interfere with the wires, the question arises whether the lessee has any right of access to the wires embedded in the lessors' property for maintenance or otherwise. Another factual question is what "interference" with the wires is precluded by the lease. It is not clear whether paragraph six prohibits defendant from interfering with the *functioning* of the wires in the ground system. The language of the paragraph is so ambiguous that whether the parties who drew up the 1971 leases intended paragraph six to preclude not only physical interference with the wires themselves but also interference with the functioning of the wires is a question of fact which we cannot resolve on the record before us. Assuming arguendo that the parties to the 1971 leases did intend paragraph six to preclude interference with the wires' functioning, the record also reveals a material issue as to whether defendant's buildings in fact have impaired the functioning of the wires.

Generally, the owner of a servient estate can use his land in any way, as long as it does not interfere with an easement (and other lawful restrictions) to which he is bound. *E.g., Waters v. Phosphate Corp.*, 310 N.C. 438, 312 S.E. 2d 428 (1984); *Pasadena v. California-Michigan Etc. Co.*, 17 Cal. 2d 576, 110 P. 2d 983 (1941). Whether a particular use of the land by the servient owner interferes with an easement is a question of fact for the jury. *Pasadena v. California-Michigan Etc. Co.*, 17 Cal. 2d 576, 110 P. 2d 983. The mere invasion of an easement, without damage thereto, does not give rise to an action quare clausum fregit. *State ex rel. Green v. Gibson Circuit Court*, 246 Ind. 446, 206 N.E. 2d 135 (1965). In other words, once an interference with an easement has been shown, in order to make out a cause of action a plaintiff bears the burden of proving that the interference injured his in-

terests in some way. *See Long v. City of Charlotte*, 306 N.C. 187, 293 S.E. 2d 101 (1982). In the instant case, the Court of Appeals erroneously held that the mere physical presence of the buildings over the wires was sufficient to establish that a taking had occurred. There remain material questions of fact whether defendant's construction of buildings over portions of the radio wires extending into defendant's land amounted to an interference with the wires within the meaning of the lease and, if so, whether this injured plaintiff.[1]

Plaintiff also contends that the defendant interfered with some of plaintiff's property rights because during the construction of the housing project defendant severed some of the underground wires. The record shows that defendant repaired at least some of the severed wires and there is also evidence that the severing of such wires could not have adversely affected the operation of plaintiff's radio station. Thus, there is also a material factual issue here with respect to whether the plaintiff's actions resulted in a taking of defendant's property rights.

If plaintiff is able to prove that an easement binding on defendant was created by paragraph six of the lease and that it was intended to prohibit the owner of the tract adjoining the leased premises from interfering with the wires and their functioning, and that defendant, as the current owner, did in fact interfere with such easement in such a way that a taking occurred, there remains a question of law to determine what property interest defendant acquired by inverse condemnation when it constructed buildings over the wires.[2] Until the foregoing issues of fact are resolved, however, this question is not reached, and we therefore will not address it here.

---

1. "In order to recover for inverse condemnation, a plaintiff must show an actual interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental . . . ." *Long v. City of Charlotte*, 306 N.C. 187, 199, 293 S.E. 2d 101, 109 (1982). *Accord Stillings v. Winston-Salem*, 311 N.C. 689, 319 S.E. 2d 233 (1984).

2. Of course then, too, the question would arise as to what damages, if any, plaintiff is entitled because of defendant's inverse condemnation of its property rights. *Cf. Mills, Inc. v. Board of Education*, 27 N.C. App. 524, 219 S.E. 2d 509 (1975) (damages constitute appropriate remedy for taking of negative easements created by language of covenant).

The decision of the Court of Appeals is reversed, and this case is remanded to that court for further remand to the Superior Court, Wilson County, for proceedings not inconsistent with this opinion.

Reversed and remanded.

Justices MEYER and VAUGHN did not participate in the consideration or decision of this case.