ROGER P. EDWARDS, JR. AND AMANDA M. EDWARDS, PLAINTIFFS V.
TERRENCE G. HILL AND LINDA LEE HILL, DEFENDANTS

No. COA09-1661

(Filed 7 December 2010)

**1. Trespass— easements—parol evidence—parties' intentions**

The trial court did not err by denying plaintiffs' claim for trespass and ruling that defendants had an easement over the pertinent portion of plaintiffs' property. The deeds, together with parol evidence emanating from both extrinsic documents and the circumstances surrounding the conveyances, created a material issue of fact regarding the parties' intentions which was appropriate for resolution by the trial court.

**2. Appeal and Error— appellate rules violations—single-spaced brief—no sanctions**

Although plaintiffs' brief was typed using single spacing in direct violation of N.C. R. App. P. 26(g)(1), the Court of Appeals chose not to impose sanctions because the violation was not a substantial failure or a gross violation that impaired the court's task of review or frustrated the adversarial process.

**EDWARDS v. HILL**

[208 N.C. App. 178 (2010)]

Appeal by Plaintiffs from order entered 11 May 2009 by Judge Ali B. Paksoy in Cleveland County District Court. Heard in the Court of Appeals 19 August 2010.

*Cerwin Law Firm, P.C., by Todd R. Cerwin, for Plaintiff-Appellants.*

*The Schweppe Law Firm, P.A., by John V. Schweppe, III, for Defendant-Appellees.*

BEASLEY, Judge.

Roger P. Edwards, Jr. and Amanda M. Edwards (Plaintiffs) appeal from the trial court's order denying their claim for trespass and ruling that Terrence G. Hill and Linda Lee Hill (Defendants) have an easement over that portion of Plaintiffs' property where the contested use was taking place. For the following reasons, we affirm.

The parties to this action own adjacent properties, both conveyed out of a larger tract, in Cleveland County, North Carolina. Plaintiffs' property consists of 20 acres located on the west side of Carpenters Grove Church Road,[1] and Defendants' 18.39 acre tract adjoins the western boundary of Plaintiffs' parcel. Plaintiffs and Defendants access their properties from Carpenters Grove Church Road by way of a 60 foot easement, which is not in dispute. Abutting the 60 foot easement is a soil road, along which both parties travel to get to and from their respective parcels. Plaintiffs admit that Defendants' have the right, pursuant to a 45 foot easement, to use the road where it meets the 60 foot easement and for a certain distance therefrom. Plaintiffs contend, however, that the 45 foot easement turns west at the northeastern corner of Defendants' property line and proceeds along Defendants' northern border, leaving the portion of the soil road south of that point unencumbered along Plaintiffs' western border. As such, Plaintiffs requested that Defendants "cease their use of that soil drive beyond the point where Defendants have access to their own property" argue that Defendants' continued use of the road alongside their eastern boundary to and from their driveway and residence constitutes a trespass. Thus arose this dispute: Plaintiffs claim

1. While the documentary evidence denoting Carpenters Grove Church Road in large part spells "Carpenters" without an apostrophe, as written above, "Carpenter's" with an apostrophe appears in some exhibits and transcript references. Thus, some quotations throughout the opinion contain the apostrophe if it appears in the original source, and, to avoid any confusion, we note that both spellings refer to the same road.

Defendants are making use of a portion of the road that is not subject to any pre-existing or granted right-of-way and Defendants respond that the 45 foot easement tracks the entire length of the soil road such that their right of use persists past the point at which Plaintiffs allege it terminates and extends to the point at which the road meets Defendants' driveway. We first review the chain of title.

The common tract from which the parties' parcels were conveyed was acquired by Native Land Homesites, LLC (NLH), which was owned by Eugene Grigg and Lewis Harrelson. NLH purchased approximately 61 acres to subdivide the parcel and convey several lots therefrom. The first conveyance was a 20 acre parcel granted to Brian Gaddy, Plaintiffs' predecessor in title, on 21 April 2003, by deed recorded in Deed Book 1370, Page 725 in Cleveland County (the "Primary Deed"). The deed was also made subject to an "existing Right-of-Way and Easement (45 feet in width) which crosses the most northwesterly portion of [the 20 acre tract]" and to the above-referenced 60 foot easement. Additionally, NLH "reserve[d] unto itself, its successors and assigns, the right to the use of the aforesaid [rights-of-way]."

Plaintiffs acquired Gaddy's 20 acre tract through two separate conveyances. On 6 October 2003, Gaddy deeded to Plaintiffs a 10 acre tract carved out of the southern half of his parcel (the "southernmost 10 acre tract"). Gaddy included in the conveyance a 45 foot easement along the northern and western boundaries of his upper parcel, allowing Plaintiffs' to cross his property "for ingress, egress and regress" between the 60 foot easement off of Carpenters Grove Church Road and the southernmost 10 acre tract. The second 10 acre conveyance was made by deed dated 23 September 2004, whereby Gaddy sold to Plaintiffs the remainder of his original parcel (the northernmost 10 acre tract). This deed was made "subject to . . . [t]hat certain 45-foot easement and right-of-way . . . running along the westerly and northerly side as shown on the survey referenced [in the Primary Deed]."

Defendants acquired their property from NLH by deed on 14 June 2005, which conveyed the 18.39 acre tract "together with a non-exclusive perpetual Right-of-Way and Easement (45 feet in width) which runs in a generally northeasterly direction to Carpenter's Grove Church Road as described in [several deeds listed therein]." The course of the soil road that Defendants use to access their residence from the 60 foot easement to their driveway is identified on the various surveys by calls L23 through L1. Only the area between the northern side of L5 and the southern end of L1 (hereinafter referred to

interchangeably as "L1 to L6" or "L6 to L1") is contested. While Plaintiffs claim Defendants' right to use the road ends at the unmarked point between lines L5 and L6 on the surveys (hereinafter referred to as "L5/L6"), Defendants maintain that their easement extends to L1 and have continued to use the soil road past that point to L1, where it turns onto their property.

On 24 July 2007, Plaintiffs filed a complaint for compensatory damages and an injunction based on allegations that Defendants committed trespass and damage to personal property. A bench trial was held on 19 March 2009, and after taking the matter under consideration, the trial court ruled that Defendants did not commit trespass across Plaintiffs' property or damage Plaintiffs' personal property. The trial court further decreed that Defendants have a 45-foot wide right-of-way and easement over the centerline of the existing soil road, including the contested portion from L1 to L6. Plaintiffs appeal.

[1] We review a judgment entered after a non-jury trial to determine "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (2002) (internal quotation marks and citation omitted). Additionally, the findings of fact are like jury verdicts in that they are conclusive on appeal if there is evidence to support them. *Stonecreek Sewer Ass'n v. Gary D. Morgan Developer, Inc.*, 179 N.C. App. 721, 725, 635 S.E.2d 485, 488 (2006). We review the record evidence to conduct our review pursuant to this standard.

NLH expressly reserved a 45 foot easement for itself, its successors, and assigns in its first conveyance to Gaddy. "An express easement in a deed, as in the instant case, is, of course, a contract." *Williams v. Skinner*, 93 N.C. App. 665, 671, 379 S.E.2d 59, 63 (1989); *see also Brown v. Weaver-Rogers Assoc.*, 131 N.C. App. 120, 122, 505 S.E.2d 322, 324 (1998) ("Deeds of easement are construed according to the rules for construction of contracts so as to ascertain the intention of the parties as gathered from the entire instrument at the time it was made."). Like the specificity required for contract terms, "an express easement must be sufficiently certain to permit the identification and location of the easement with reasonable certainty." *Wiggins v. Short*, 122 N.C. App. 322, 327, 469 S.E.2d 571, 575 (1996) (internal quotation marks and citation omitted).

When an easement is created by deed, either by express grant or by reservation, the description thereof "must either be certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which it refers. . . . *There must be language in the deed sufficient to serve as a pointer or a guide to the ascertainment of the location of the land.*"

It is to be stressed that an alleged grant or reservation of an easement will be void and ineffectual only when there is such an uncertainty appearing on the face of the instrument itself that the court—reading the language in the light of all the facts and circumstances *referred to in the instrument*—is yet unable to derive there from the intention of the parties as to what land was to be conveyed.

*Allen v. Duvall*, 311 N.C. 245, 249, 316 S.E.2d 267, 270 (1984) (internal citations omitted). A survey referenced in a deed becomes a part thereof and need not be recorded. *Kaperonis v. Highway Commission*, 260 N.C. 587, 133 S.E.2d 464 (1963).

An ambiguity in the grant or reservation of an easement does not necessarily make the conveyance void and ineffectual. Indeed, "[i]f the description of an easement is 'in a state of absolute uncertainty, and refer[s] to nothing extrinsic by which it might possibly be identified with certainty,' the agreement is patently ambiguous and therefore unenforceable." *King v. King*, 146 N.C. App. 442, 445, 552 S.E.2d 262, 264-65 (2001) (quoting *Lane v. Coe*, 262 N.C. 8, 13, 136 S.E.2d 269, 273 (1964)). However, "[a] description is latently ambiguous if it is insufficient in itself to identify the property but refers to something extrinsic by which identification might possibly be made." *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 123, 388 S.E.2d 538, 551 (1990) (internal quotation marks omitted). If there is a latent ambiguity in an easement description, "parol evidence will be admitted to fit the description to the thing intended." *Thompson v. Umberger*, 221 N.C. 178, 180, 19 S.E.2d 484, 485 (1942). For, while "[a] patent ambiguity raises a question of construction[,] a latent ambiguity raises a question of identity." *Prentice v. Roberts*, 32 N.C. App. 379, 382, 232 S.E.2d 286, 288 (1977).

The determination that an ambiguity is latent opens the door for a party seeking establishment of an easement to " 'offer evidence, parol and other, with reference to such extrinsic matter tending to identify the property,' and the other party 'may offer such evidence with reference thereto tending to show impossibility of identifica-

EDWARDS v. HILL

[208 N.C. App. 178 (2010)]

tion.' " *King*, 146 N.C. App. at 445, 552 S.E.2d at 265 (quoting *Lane*, 262 N.C. at 13, 136 S.E.2d at 273).

Although extrinsic evidence is not permitted in order to add to, detract from, or vary the terms of an integrated written agreement, extrinsic evidence is admissible in order to explain what those terms are. Therefore, extrinsic evidence as to the circumstances under which a written instrument was made has been held to be admissible in ascertaining the parties' expressed intentions, subject to the limitation that extrinsic evidence is not admissible in order to give the terms of a written instrument a meaning of which they are not reasonably susceptible.

*Century Communications v. Housing Authority of City of Wilson*, 313 N.C. 143, 146-47, 326 S.E.2d 261, 264 (1985) (internal citations omitted). Moreover, where doubt arises as to the parties' true intentions, "the court should construe the deed of easement with 'reason and common sense' and adopt the interpretation which produces the usual and just result." *Brown*, 131 N.C. App. at 122, 505 S.E.2d at 324 (quoting *Hundley v. Michael*, 105 N.C. App. 432, 435, 413 S.E.2d 296, 298 (1992)); *see also Allen*, 311 N.C. at 251, 316 S.E.2d at 271 ("The law endeavors to give effect to the intention of the parties, whenever [it] can be done consistently with rational construction.").

While construction of a plain and unambiguous contract is a question of law for the courts, *Cochran v. Keller*, 84 N.C. App. 205, 211, 352 S.E.2d 458, 462 (1987), here, the easement deed from NLH to Defendants (the "Defendants' Deed") is not plain and unambiguous. Specifically, NLH conveyed to Defendants 18.39 acres

[t]ogether with a non-exclusive perpetual Right-of-Way and Easement (45 feet in width) which runs in a generally northeasterly direction to Carpenter's Grove Church road as described in Deed Book 1391 at Page 1653; Deed Book 1370 at Page 725; Deed Book 1387 at Page 954; and Deed Book 1412 at Page 709 which Easement is incorporated by reference as if fully set out herein.

Thus, although the Defendants' Deed leaves the parties' agreement as to the location of the 45 foot easement undisclosed, the easement description does expressly incorporate the description thereof provided in these four deeds. Accordingly, the Defendants' Deed does point to extrinsic evidence by which identification of the easement might possibly be made, and we treat the surveys referenced therein as having become part of the respective deeds.

One extrinsic document referenced therein is the Primary Deed in this action, appearing in Deed Book 1370 at Page 725, which made the conveyance to Gaddy subject to the rights of others to use the existing 45 foot easement crossing the northwesterly portion of the 20 acre parcel. The Primary Deed also indicated that the property was "more particularly described in accordance with an unrecorded plat and survey made thereof by T. Scott Bankhead, Registered Surveyor, dated April 07, 2003." NLH also reserved for itself, as Grantor, and its successors and assigns "the right to the use of the portion of the Right-of-Way and Easement (45 feet in width) which crosses the northwesterly boundary line" of the 20 acre parcel (the "Reserved Easement") as shown upon the 7 April 2003 survey. This survey depicts a "45' Easement to 10 Acre Tract" over a "line with soil road" traversing the northern boundary line of the 20 acre parcel from the 60' easement off of Carpenters Grove Church Road, curving along with then-Gaddy's western boundary, and deviating in a westerly direction at L5/L6 on the survey. The westerly deviation crosses what would ultimately become Defendants' northern boundary, and that portion was marked "Proposed 45' Easement" on the 7 April 2003 survey.

Eugene Grigg was qualified as an expert and testified at trial that the proposed right of way arose in connection with discussions between NLH and Bob Blaire regarding the latter's purchase of 10 acres west of the parcel that later became Defendants'. Although the deal fell through, the 7 April 2003 survey indeed identifies the area reached by the "Proposed 45' Easement" as "10 Acre Tract to be Deeded to Bob Blaire." Mr. Grigg continued that the purpose of that easement was to give Blaire a right of way from the 45' easement that crossed the 20 acre parcel up to the 10 acres he planned to buy. He said that easement had "nothing to do" with the Primary Deed or Defendants' easement, nor did it limit Defendants' rights to use the soil road from L6 to L1. Mr. Grigg further explained that the 7 April 2003 survey should have reflected the existing 45' right of way by continuing the dashes to illustrate that the easement extended to the point at which the soil road begins to run wholly within the boundary lines of the 18.39 acre parcel. He stated: "So even though Mr. Bankhead did not dot that off on—down there, that should have been dotted off and it should have been shown a right of way all the way up to L1." In fact, the legal description of the Primary Deed defines part of the western boundary of the 20 acre parcel going from a "new line" therein identified "to a point located in the centerline of an existing Right-of-Way and Easement (45 feet in width)." The descrip-

**EDWARDS v. HILL**

[208 N.C. App. 178 (2010)]

tion provides that "the following calls and distances" run "thence with the centerline of said Right-of-Way and Easement." The call for that point located in the center of the existing 45' right of way is marked as L1 on the survey, and the calls and distances listed in the deed as running with the existing easement are referred to as L1 through L23. Thus, the Primary Deed describes this existing right of way separately from the paragraph in which NLH reserves a 45' easement, and the former is unidentified on the survey referenced therein. Whether the easement at issue stops at L5/L6 or at L1, both alternatives could be said to "cross[] the northwesterly boundary line of the [20 acre] tract of property," as the Reserved Easement describes, leaving the precise identification of Defendants' right of way ambiguous. However, we may turn to the other extrinsic evidence, parol and other, referred to in the deeds.

The easement description in Defendants' Deed also references Deed Book 1931, Page 1653 ("Plaintiffs' First Deed"). The 45 foot easement described in Plaintiffs' First Deed actually defines an easement granted by Gaddy to Plaintiffs when they purchased the southernmost 10 acre tract (the "Gaddy Easement"). Plaintiffs' First Deed provides that the Gaddy Easement consists of "the 45 foot strip lying east and south of the western and northern boundaries of Grantor's adjacent property (that portion acquired by Grantor by deed recorded in Book 1370 at page 725 which is not being conveyed in this transaction)" and then describes the path of the easement with calls and distances. This separate and distinct easement, however, was extinguished by the doctrine of merger when Plaintiffs purchased the northernmost 10 acre tract from Gaddy, as there is no evidence of a pre-existing easement lying wholly within the 20 acre parcel at that location. *See Tower Development Partners v. Zell*, 120 N.C. App. 136, 143, 461 S.E.2d 17, 22 (1995) ("It is axiomatic in property law that one may not have an easement in his or her own land. . . . Ordinarily the doctrine of merger would apply and extinguish the easement[.]"). Thus, the Gaddy Easement is not at issue. Plaintiffs' First Deed also references a survey by Bankhead dated 14 August 2003 as more particularly depicting the 10 acre tract and the 45 foot and above-described 60 foot easements. While Plaintiffs' First Deed makes no mention of the 45 foot easement reserved by NLH in its earlier 20 acre conveyance to Gaddy, the 14 August 2003 survey depicts both an "Existing 45' Easement/Righ[t] of Way," referencing "DB 1370 Pg 725," and a "Proposed 45' Easement/Right of Way (to 10 Ac. Tract)." The third extrinsic document referred to in the easement description of

Defendants' Deed is a second deed from NLH to Gaddy (the "Second NLH-Gaddy Deed") recorded at Deed Book 1387, Page 954, which pre-dated Gaddy's first conveyance to Plaintiffs and conveyed a 10 acre parcel situated west of Gaddy's original 20 acre tract and north of what would become Defendants' property. The Second NLH-Gaddy Deed was made subject to the rights of others to use the existing 45 foot easement crossing "the most southeasterly portion" of the sub-ject premises as shown on a survey by Bankhead dated 6 August 2003. In this deed, NLH also reserved for itself, its successors, and assigns the right to use the portion of the 45 foot easement over the "south-easterly boundary line" of Gaddy's new 10 acre tract and referenced the 7 April 2003 survey for the description thereof.

Finally, Defendants' Deed also references Deed Book 1412 at Page 709, where a deed dated 19 April 2004 from NLH to Ruth M. Riegler (the "Riegler Deed") is recorded. The Reigler Deed conveyed a 13 acre parcel situated to the west of Defendants' tract and the property Gaddy acquired through the Second NLH-Gaddy Deed. The Riegler parcel consists of the 10 acres that were the subject of nego-tiations between NLH and Blaire and an additional 3 acres and is described in the Riegler Deed through reference to a survey by Bankhead dated 19 March 2004. The "Proposed 45' Easement" appearing on the 7 April 2003 from the unmarked point between L5 and L6 to the 10 acre tract to be deeded to Blaire is located in the same place as a "New 45' Easement—R/W" on the 19 March 2004 sur-vey. The Riegler survey also draws the "Existing 45' Easement" over the "centerline of [the] existing soil road," with reference to the Primary Deed and the Second NLH-Gaddy Deed. Interestingly, the 19 March 2004 survey depicts this existing easement as extending past the point identified by L5/L6 on the other surveys. In fact, the dashes marking this easement across the existing soil road continue to the point where L1 would be had those calls and distances been repro-duced on the Riegler survey.

The trial court also admitted as exhibits the surveys incorporated into the general property description sections of the parties' respec-tive deeds. Although Defendants' Deed was made after the Riegler Deed, the survey referenced in the boundary description of Defendants' parcel was initially prepared on 21 October 2003. While it does not depict the continuation of the easement along the soil road past L5/L6, it does show an existing iron rebar at the southwest-ern end of L1. This survey was revised on 27 May 2004 to illustrate that the existing soil road, which connected the subdivision to the 60'

easement and Carpenters Grove Church Road, continued past L5/L6 to the rebar at L1 before crossing into and proceeding wholly within Defendants' parcel. Plaintiff's deed from Gaddy for the northernmost 10 acre tract also makes the conveyance subject to "[t]hat certain 45-foot easement and right-of-way for ingress, egress and regress running along the westerly and northerly side as shown on the survey . . . dated April 7, 2003." This deed references no other extrinsic document in the easement description and thus raises the same questions regarding the potential inaccuracies of the 7 April 2003 survey and the ambiguities presented by the Primary Deed, which was relied upon in the preparation of that survey.

While the above-described extrinsic documents reveal some inconsistencies between the relevant deeds and the surveys they reference, additional evidence before the trial court tended to remove any latent ambiguity that lingered after consulting the parties' deeds. For the following reasons, we conclude that the deeds, together with parol evidence emanating from both extrinsic documents and the circumstances surrounding the conveyances, created a material issue of fact regarding the parties' intentions which was appropriate for resolution by the trial court.

Our Supreme Court has held

> that the effect to be given unambiguous language contained in a written instrument is a question of law, but where the language is ambiguous so that the effect of the instrument must be determined by resort to extrinsic evidence that raises a dispute as to the parties' intention, the question of the parties' intention becomes one of fact. However, the determination of the parties' intention is not for the jury but is the responsibility of the judge in construing and interpreting the meaning of the instrument.

*Runyon v. Paley*, 331 N.C. 293, 305, 416 S.E.2d 177, 186 (1992). While the parties' intent must ordinarily be ascertained from the deed or instrument, "when the language used in the instrument is ambiguous, the court, in determining the parties' intention, must look to the language of the instrument, the nature of the restriction, the situation of the parties, and the circumstances surrounding their transaction."

The trial court made twenty findings of fact, including:

> 13. In [the Primary Deed], NLH conveyed to Gaddy, subject to the rights of others, the right to use the existing Right-of-Way

and Easement 45 feet in width that crosses the most north-westerly portion of the twenty acre tract as shown [on] the survey dated April 7, 2003.

14. NLH reserved the right to use the portion of the said right of way and easement, 45 feet in width, crossing the northwesterly boundary line of the 20 acre tract conveyed to Gaddy and then to Plaintiffs.

15. Within the legal description of that [Primary Deed] is a reference to several calls running with the centerline of an existing Right-of-Way and Easement 45 feet in width. These calls are referenced on the April 7, 2003 survey as calls L1 through L23.

16. When NLH purchased the entire acreage, there was in existence a road running through the property. This road is shown on the April 7, 2003 survey by the calls of L1 through L23, and was in existence approximately 30 to 40 years before NLH purchased the tract. The existing road is large enough for cars and continues past the L1 call to the Defendants' property.

17. The intent of NLH was to develop the larger tract with reference to the existing road, and reference to the most northwesterly portion of Plaintiffs' boundary meant all the existing road beginning with call L1 as shown on the April 7, 2003 survey.

18. The intent of NLH was to extend over the exi[s]ting road 22.5 feet on each side of the center line from call L1 to the existing 60' easement as shown on the April 7, 2003 survey.

The trial court also found that Plaintiffs' objected to Defendants' use of that portion of the easement from L6 to L1 but that Defendants used the L6 to L1 portion of the road to put in a driveway, build their house, and travel to and from their property.

Initially, it is clear that NLH intended to reserve for itself, its successors, and its assigns an easement 45' in width across an existing right of way that traversed the northwestern boundary of the 20 acre tract it first conveyed from its larger parcel. We acknowledge Plaintiffs' argument regarding finding of fact 15 that the Primary Deed's reference to the calls running with the centerline of the existing right of way in the metes and bounds description of the tract being conveyed to Gaddy "does not by itself convey that property or object." However, the fact that the right of way so described follows

an existing road that appears on the survey referenced therein, where there is testimony from Mr. Grigg that the surveyor erred in failing to depict the portion of the Reserved Easement from L6 to L1 as intended by the grantor NLH, the question is not one of construction, which would render the ambiguity patent, but of identification, raising a latent ambiguity as to the length of the 45' easement in question. Moreover, attorney Mark Lackey was qualified as an expert in real estate law and testified at trial that the Primary Deed "does create an ambiguity about where—how—how far the right of way goes when it refers specifically to the center line of a right of way that there are no dashed lines to on the plat."

"When the terms used in the deed leave it uncertain what property is intended to be embraced in it, parol evidence is admissible to fit the description to the land—never to create a description." *Allen*, 311 N.C. at 251, 316 S.E.2d at 271. This case is unlike *Oliver v. Ernul*, 277 N.C. 591, 178 S.E.2d 393 (1971), where although the road existed prior to the conveyance, the deed failed to create an easement for a road because no reference was made to it in the paper writing. Here, the description of the Reserved Easement in the Primary Deed, while indefinite, followed the description of an existing easement of the same 45-foot width in the same general location, raising the question of whether the "northwesterly boundary line" of the 20 acre parcel was to be gleamed from the 7 April 2003 survey or the calls tracking the road in the general property description of the same deed. Moreover, the Primary Deed, read in light of the circumstances and the nature of the land referred to in the instrument, does not leave the length of the easement in a state of absolute uncertainty. Plaintiffs' and Defendants' deeds also refer to extrinsic documents that serve as a guide to the ascertainment of the location of the easement. The only thing the language of the relevant deeds leaves unclear is which of two readily identifiable points was intended to represent the end of the 45' easement that NLH reserved and later granted to its successor, Defendants. Accordingly, "[p]arol evidence is resorted to merely to bring to light this intention," not "to create it," *Thompson*, 221 N.C. at 180, 19 S.E.2d at 485, such that "[Defendants] may offer evidence, parol and other, with reference to such extrinsic matter tending to identify the property, and [Plaintiffs] may offer such evidence with reference thereto tending to show impossibility of identification, i.e., ambiguity." *Prentice*, 32 N.C. App. at 382, 232 S.E.2d at 288 (internal quotation marks and citations omitted). Thus, the language of the Reserved Easement, together with the Primary Deed as a whole, is

sufficient to permit the trial court to admit proper evidence tending to fit the description to the land.

We conclude that each of the trial court's findings of fact are supported by competent evidence. Not only does the 7 April 2003 survey locate the original road on the ground, as described in the Primary Deed, but Mr. Grigg also testified that this survey, relied upon by Bankhead in preparing the subsequent surveys referenced in the extrinsic documents, inaccurately depicted the length of the easement. Thus, the trial court properly resolved this genuine issue of material fact by considering other admissible evidence clarifying the intention of the parties. The testimony introduced at trial showed the following regarding the nature of the land: the existing road was wide enough for vehicular travel; at point L1, it widens at a clearing broad enough for cars to turn around before the road turns into Defendants' property and proceeds entirely within the 18.39 acre parcel; and the steepness, grade, and dense forestry at other potential access points to Defendants' parcel would render construction of an alternate means of ingress and egress extremely difficult. Mr. Grigg described the part of the road that runs into Defendants' property as "be[ing] like a driveway that goes to somebody's house." Several photographs introduced at trial also depict the characteristics of the road and surrounding landscape near the area at which Plaintiffs contend the easement ends at L5/L6. Mr. Grigg also testified that he and his partner, Mr. Harrelson, walked the property three or four times before NLH purchased the 61 acres "to see where the corners were, [and they] walked the existing right of way that went up through the middle of the property." Where Mr. Grigg drafted the deeds from NLH, this is further evidence that he used the phrase "existing right of way" to refer to the soil road already in place. They had the road regraded and a culvert put in, as it was the intent of NLH that "L1 to L6 [would be] used to service, you know, a road that adjoined tracts." Mr. Grigg further provided his interpretation as the drafter of the various deeds that the phrases "most northwesterly portion" and "northwesterly boundary line" of the 20 acre parcel referred to that length of road from the 60' easement to L1. He continued that the northwestern property line is "roughly in the center line of the existing road bed[,] [a]nd so there's supposed to be—what we had intended was 22 and a half feet on each side of that property line." Mr. Grigg indicated that the Riegler survey, which drew the existing 45' easement down to where L1 would be on the other maps, better illustrates the intent of NLH with regard to the easements because the "intent was not to

limit [Defendants'] use to L5 or L6 in that area . . . [but to] allow access all the way to point L1."

We are also guided by precedent set by our Supreme Court in addressing situations affected by similar ambiguities:

> [W]here the grant of an easement of way does not definitely locate it, it has been consistently held that a reasonable and convenient way for all parties is thereby implied, in view of all the circumstances[.] . . . It is a settled rule that where there is no express agreement with respect to the location of a way granted but not located, the practical location and user of a reasonable way by the grantee, acquiesced in by the grantor or owner of the servient estate, sufficiently locates the way, which will be deemed to be that which was intended by the grant.

*Allen*, 311 N.C. at 249, 316 S.E.2d at 270 (internal quotation marks and citation omitted). Here, there was evidence that after NLH conveyed the 20 acres to Gaddy, NLH continued to use the L6 to L1 portion of the soil road to show prospective buyers the 18.39 acre tract and Gaddy acquiesced, acknowledging at trial that "it was a good way to come there." *See id.* at 251, 316 S.E.2d at 271 ("The use of the roads in question by plaintiffs' predecessors in title, acquiesced in by defendants' predecessors in title of the servient estate, sufficiently locates the roads on the ground, which is deemed to be that which was intended by the reservation of the easements."); *see also Prentice*, 32 N.C. App. at 383, 232 S.E.2d at 288 ("When the grant does describe with reasonable certainty the easement created and the dominant and servient tenements, but does not definitely locate it, the easement is not held void for uncertainty under the statute of frauds, but instead, the grantee is entitled to a reasonable and convenient way located in the manner and within the limits set forth in the grant. The easement may also be located by the practical location by the grantee, acquiesced in by the grantor." (internal quotations omitted)). Indeed, when Defendants met with Mr. Harrelson to look at the 18.39 acre property, they entered the parcel from "the top of the road where it widens out there at point L1" Defendant Terrence Hill testified that he and Mr. Harrelson discussed the easement that spanned Defendants' eastern property line until reaching point L1. Mr. Harrelson pointed out the iron rebar situated at L1, as depicted on the various surveys, and indicated that the significance of that visible marker was that it would enable Defendants to "always find that point [where their 45' easement ends]," further shedding light on the intent of grantor and

grantee at the time the easement at issue was conveyed to Defendants.

In light of the above-described deeds, along with the extrinsic documents they reference and in consideration of "the subject matter involved, the situation of the parties at the time of the conveyance and the purpose sought to be accomplished," *Cochran*, 84 N.C. App. at 212, 352 S.E.2d at 463, parol and other evidence was properly admitted to reveal the parties' intentions regarding the length of the easement. As such, the trial court had at its disposal an abundance of evidence that allowed it to find that NLH intended "to develop the larger tract with reference to the existing road" tracking "the most northwesterly portion of Plaintiffs' boundary [which] meant all the existing road beginning with call L1." Its finding that "[t]he intent of NLH was to extend over the exi[s]ting road 22.5 feet on each side of the center line from call L1 to the existing 60' easement" is also supported by competent evidence. We hold that the findings of fact also support the trial court's conclusions that Defendants have an easement over the centerline of the existing road 45 feet in width as identified by the calls beginning with L1 to the 60 foot easement referenced in the Primary Deed and shown on the 7 April 2003 survey and, thus, did not commit trespass across Plaintiffs' property. We also believe that in endeavoring to give effect to the parties' intentions, the trial court did in fact construe the deeds of easement with reason and common sense to adopt the interpretation that produced the usual and just result. *Brown*, 131 N.C. App. at 122, 505 S.E.2d at 324.

**[2]** Lastly, we address the format of Plaintiffs' brief. Plaintiffs' brief was typed using single spacing in direct violation of Appellate Rule 26(g)(1), which states that "[t]he body of text shall be presented with double spacing between each line of text." N.C.R. App. P. 26(g)(1). "Compliance with the rules . . . is mandatory." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 194, 657 S.E.2d 361, 362 (2008). "But '[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them." *Id.* at 194, 657 S.E.2d at 363 (quoting *Hormel v. Helvering*, 312 U.S. 552, 557, 85 L. Ed. 1037 (1941)). While the Supreme Court of North Carolina has held that noncompliance with the our Appellate Rules may call for sanctions, to include dismissal, "noncompliance with the appellate rules does not, *ipso facto*, mandate dismissal of an appeal." *Id.* "Despite the Rules violations, we are able to determine the issues in this case on appeal. Furthermore, we note that Defendants, in filing a brief that thoroughly responds to Plaintiffs' arguments on appeal, were put on

sufficient notice of the issues on appeal." *Youse v. Duke Energy Corp.*, 171 N.C. App. 187, 192, 614 S.E.2d 396, 404 (2005) Though this Court has the authority to sanction Plaintiffs, "the appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a 'substantial failure' or 'gross violation,' " which is established if the violations would "impair[] the court's task of review" or "frustrate the adversarial process." *Dogwood*, 362 N.C. at 199-200, 657 S.E.2d at 366-67 (explaining that N.C.R. App. P. 25(b) allows the appellate court to "impose a sanction . . . when the court determines that [a] party or attorney or both *substantially* failed to comply with these appellate rules" and that "[t]he court may impose sanctions of the type and in the manner prescribed by Rule 34"). A review of Plaintiffs' brief shows that these violations do not "impair the court's task of review" or "frustrate the adversarial process." Because this violation is not a "substantial failure" or a "gross violation," we have addressed the merits of Plaintiffs' appeal and choose not to impose sanctions. However, we admonish Plaintiff-Appellants' counsel to comply with N.C.R. App. P. 26(g)(1) in the future.

Affirmed.

Judges GEER and JACKSON concur.