**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 10-1302**

———————

WILLIAM B. GRAY, III, d/b/a Greenwood Clinic of
Chiropractic, individually and for the benefit and on
behalf of all others similarly situated; B AND K SERVICES
INCORPORATED,

              Plaintiffs – Appellees,

       and

STEVE WALL AND ASSOCIATES LLC, f/k/a SC Insurance Services
LLC, d/b/a Morgan and Associates Incorporated; UNLIMITED
SERVICES OF GREENWOOD INCORPORATED, individually and for
the benefit and on behalf of all others similarly situated,

              Plaintiffs,

          v.

HEARST COMMUNICATIONS, INCORPORATED; WHITE DIRECTORY
HOLDINGS CAROLINA INCORPORATED,

              Defendants – Appellants,

       and

TALKING PHONE BOOK; SAIA HOLDINGS LLC; SAIA PUBLISHING
COMPANY; MICHAEL BROWN; WHITE DIRECTORY HOLDINGS
PENNSYLVANIA INCORPORATED; WHITE DIRECTORY OF CAROLINA,
INCORPORATED,

              Defendants.

———————

Appeal from the United States District Court for the District of
South Carolina, at Anderson.  G. Ross Anderson, Jr., Senior
District Judge. (8:08-cv-01833-GRA)

———————

Argued: December 7, 2010          Decided: August 25, 2011

---

Before WILKINSON and SHEDD, Circuit Judges, and Norman K. MOON, Senior United States District Judge for the Western District of Virginia, sitting by designation.

---

Affirmed by unpublished opinion. Judge Shedd wrote the majority opinion, in which Senior Judge Moon joined. Judge Wilkinson wrote a dissenting opinion.

---

**ARGUED**: Alan Mansfield, GREENBERG TRAURIG, LLP, New York, New York, for Appellants. Daniel S. Haltiwanger, RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC, Barnwell, South Carolina, for Appellees. **ON BRIEF**: Stephen L. Saxl, William A. Wargo, GREENBERG TRAURIG, LLP, New York, New York; R. Bruce Shaw, Stephen G. Morrison, NELSON MULLINS RILEY AND SCARBOROUGH, LLP, Columbia, South Carolina, for Appellants. Terry E. Richardson, Jr., Christopher J. Moore, RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC, Barnwell, South Carolina; Jon E. Newlon, MCCRAVY, NEWLON & STURKIE LAW FIRM, P.A., Greenwood, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Hearst Communications, Inc. and White Directory Holdings Carolina, LLC (collectively "White Directory") appeal the district court's order conditionally certifying class action claims against them for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices. For the following reasons, we affirm the certification order.

These claims, brought by William B. Gray, III, d/b/a Greenwood Clinic of Chiropractic, and B & K Services, Inc., on behalf of themselves and other similarly situated advertisers (collectively "Gray"), stem from Gray's purchase of advertising in The Talking Phone Book telephone directories which are published and distributed by White Directory in various markets throughout South Carolina. Gray alleges White Directory solicited the class members to enter into advertising contracts through the use of concerted sales efforts touting White Directory's superior distribution coverage, but that White Directory knowingly misrepresented its actual distribution, never made a full distribution as promised, and intentionally sought to conceal this deception.

Gray initially asserted seven causes of action, but eventually sought class certification on only three theories of relief: breach of contract, breach of the implied covenant of

good faith and fair dealing, and unfair and deceptive trade practices. After a hearing on the motion for class certification, the district court entered an order conditionally certifying all three class claims. White Directory timely filed a petition for review. We review the class certification decision for abuse of discretion. Brown v. Nucor Corp., 576 F.3d 149, 152 (4th Cir. 2009).

Although White Directory raises several issues on appeal, the primary issue is whether the district court erred in finding that Gray's proposed class action claims satisfy the commonality and predominance requirements of Federal Rule of Civil Procedure 23. In granting certification, the district court determined that each of Gray's claims ultimately hinges on whether he can establish a distribution obligation, which is a question that the district court found is capable of classwide proof and predominates over any individual issues. We agree.

Federal Rule of Civil Procedure 23 establishes the standard for class certification, and a proposed class must meet the requirements of both Rule 23(a) and Rule 23(b). First, a class action "must comply with the four prerequisites established in Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation." Gunnells v. Healthplan Services, Inc., 348

4

F.3d 417, 423 (4th Cir. 2003) (quoting Fed. R. Civ. P. 23(a)). Second, the class action must also fall within one of the three categories established in Rule 23(b). Id. Here, Gray seeks certification of his claims under Rule 23(b)(3), which requires proof that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A plaintiff seeking class certification bears the burden of proving the proposed class complies with the requirements of Rule 23. Windham v. Am. Brands, Inc., 565 F.2d 59, 65 n.6 (4th Cir. 1977) (en banc).

Commonality is generally established when a plaintiff's claims have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court recently clarified, in order to satisfy the commonality requirement, the plaintiff must "demonstrate that the class members 'have suffered the same injury,'" Wal-Mart Stores, Inc., v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982)), and that the claim "depend[s] upon a common contention" that "is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," id.

5

"In a class action brought under Rule 23(b)(3), the commonality requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 609 (1997)) (internal quotation marks omitted). The Rule 23(b)(3) predominance requirement is "far more demanding" than Rule 23(a)(2)'s commonality requirement, and the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., 521 U.S. at 623. In other words, to satisfy Rule 23(b)(3), "[c]ommon questions must predominate over any questions affecting only individual members; . . . [such that] a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated." Id. at 615 (internal quotation marks omitted).

White Directory initially argued the contracts at issue did not include an express distribution term and therefore contained no contractual obligation regarding distribution. However, during oral argument, White Directory conceded the contracts do contain a distribution obligation, and further conceded the distribution plan or scheme is the same for all

6

advertisers in any given coverage area. Thus, there is no dispute that a uniform distribution obligation exists.

Having conceded the existence of a uniform distribution obligation, White Directory's remaining objections to class certification carry little weight. White Directory's insistence that there can be no proof of a distribution obligation absent a distribution number, which the contracts do not contain, is simply a variation of its now-rejected argument that the contracts contain no distribution obligation at all. Likewise, because White Directory concedes it has a distribution obligation under the contract, the contracts' integration clause and North Carolina's parol evidence rule[1] do not bar the use of extrinsic evidence to determine what that obligation is. See, e.g., Edwards v. Hill, 703 S.E.2d 452, 456 (N.C. Ct. App. 2010) (noting extrinsic evidence may be used to explain the terms and the parties' expressed intentions in an integrated agreement). In fact, during oral argument White Directory described its distribution requirement under the contracts as its "normal course of distributing books." Evidence of such course of dealings and course of performance is permissible to explain or supplement contractual terms. See Phelps v. Spivey, 486 S.E.2d

---

[1] The parties agree that North Carolina law applies to Gray's breach of contract claim pursuant to the choice of law provision in the contracts.

226, 228-29 (N.C. Ct. App. 1997) (citing N.C. Gen. Stat. § 25-2-202).

Finally, White Directory misses the mark by focusing on the individualized nature of the different representations that may (or may not) have been made in the negotiations between each advertiser and White Directory. As we already discussed: White Directory concedes (and common sense dictates) that the normal course of distribution is the same for all directory advertisers in a given market. Accordingly, the level of distribution does not vary based on what advertisers pay.

It is this uniform distribution practice which distinguishes Wal-Mart. In Wal-Mart, the putative class sought to prove Wal-Mart had a general policy of discrimination that guided millions of allegedly discriminatory employment decisions. However, in Wal-Mart there was a question of whether a general policy concerning such decisions existed and whether that general policy applied to all hiring decisions. Here, unlike Wal-Mart, there is no dispute that a uniform policy (or obligation) exists or that such a uniform policy applies to all plaintiffs; White Directory concedes both. Moreover, to the extent White Directory argues its sales representatives made representations regarding distribution that differed from the distribution obligation in the contract, evidence of those representations – unlike evidence of White Directory's course of

8

dealings concerning distribution - <u>would</u> be barred by the contract's integration clause.

Thus, although White Directory's sales representatives may have had broad discretion to make different sales pitches to different advertisers, they could not make binding promises regarding distribution obligations which differed from that reflected in the contract. And, even if the parties may have had different expectations regarding other variables (<u>e.g.</u> size, color, location, price, etc.), the common predominating question focuses on whether White Directory fulfilled that distribution obligation.

To summarize, we think the district court was correct: the common question regarding White Directory's distribution obligation predominates over any individual issues because the putative class members all assert injury from the same action (<u>i.e.</u> failure by White Directory to follow its standard distribution practice), and determination of whether White Directory breached its standard distribution obligation will resolve in one stroke an issue that is central to the validity of the class members' breach of contract claims. In addition, the district court correctly found that Gray may rely on extrinsic evidence to establish what that normal course of distribution is. Because the same distribution obligation applies to every advertiser within the same geographic market

9

area, evidence of White Directory's distribution obligation would apply to all such advertisers. Whether White Directory reasonably met that obligation becomes a common question of fact for the jury to decide.[2]

Accordingly, we affirm the district court's certification of the class.[3]

AFFIRMED

---

[2] We have reviewed Gray's breach of a good faith and fair dealing and unfair trade practices claim and believe he satisfied his burden of establishing commonality as to those two claims. Like the breach of contract claim, both of the remaining claims center on the distribution obligation.

[3] White Directory also argues that the district court abused its discretion by (a) certifying Gray's class on a conditional basis, (b) failing to conduct a rigorous analysis of the record, and (c) finding the class satisfied the superiority, typicality, and adequacy requirements of Rule 23(b)(3). We have reviewed the record and find no abuse of discretion by the district court on these matters.

WILKINSON, Circuit Judge, dissenting:

This case concerns whether advertisers pursuing a breach of contract class action met the commonality requirement of Rule 23(b)(3) for class certification, that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis added). Plaintiffs contend that this standard was satisfied, but an irresolvable paradox lies at the heart of their position. On the one hand, plaintiffs insist that there is commonality due to a uniform distribution obligation in the contracts. See ante, at 8. Yet on the other, they nonetheless concede that extrinsic evidence, which inevitably will be individualized, is permissible and necessary to establish what the normal course of distribution even was. See ante, at 9. Because the integrated contracts in fact lack any uniform distribution term to supply the necessary commonality of law or fact, I respectfully dissent.

I.

There is no uniform distribution policy in the contracts for the defendants to have allegedly breached. The contracts would be the logical place to look for such an obligation and if it were there, the certification could readily be affirmed. I have looked high and low for such a distribution

11

term, but cannot find one for the simple reason that the contracts in this breach of contract action do not have one. It is the contracts that would have supplied a ready commonality for something that now is anybody's guess.

The majority's conclusion depends on its assertion that "during oral argument, White Directory conceded the contracts do contain a distribution obligation." Ante, at 6. But concessions at oral argument, if made, are always to be taken cautiously and there remains no provision in the contract in which any distribution obligation is embodied.

So when and how was what to be distributed to whom? Plaintiffs fail to cite any language from the contracts to demonstrate that any such distribution obligation exists within them. They don't do so because they can't -- such language is nowhere to be found in the contracts themselves.

II.

To establish a distribution requirement and demonstrate its breach therefore requires resort to individualized extrinsic evidence of exactly the kind deemed insufficient to support class certification by the Supreme Court in Wal-Mart under the even lower threshold of Rule 23(a)(2). See Fed. R. Civ. P. 23(a)(2) (requiring commonality of questions of law or fact, but not requiring predominance of those

12

questions as in Rule 23(b)(3)); <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541 (2011). In <u>Wal-Mart</u>, the Court was troubled by the lack of proof of a uniform discrimination policy. Likewise, in <u>Hearst</u>, there is no distribution term in the integrated contracts speaking to what appellees contend is the common issue demonstrating breach of contract. Without a contract term directly addressing the mechanics of distribution or the exact number of phone books to be distributed, plaintiffs must turn to individualized extrinsic evidence to establish an implied distribution term.

## A.

To compensate for the contract's silence on distribution and construct what might pass for a distribution policy, plaintiffs invite the district court to resort to extrinsic evidence regarding White Directory's distribution practices. <u>See</u> <u>ante</u>, at 9. But by focusing on distribution practices, and not on the representations made to clients with respect to their individual contracts, plaintiffs are the ones that "miss[] the mark." <u>Ante</u>, at 8. Any practice of distribution still begs the critical question of what that distribution number was or whether the clients had any uniform expectation of what it would be. Absent an explicit distribution term in the contracts, uniformity in actual

13

distribution tells us nothing about the reliance interests of individual clients that could form the basis of a contractual breach. This is especially true if the expectations and intent of each client varied as a product of the individualized sales representations that client received.

With respect, the majority is mistaken in its attempt to distinguish Wal-Mart on the basis of White Directory's "uniform distribution practice." Ante, at 8. The relevant policy is not White Directory's distribution practices, but rather its sales policy, which sheds light on the reliance interests of the parties and whether they were uniform. And in this respect, Wal-Mart is squarely on point. Wal-Mart's policy that granted broad discretion to local supervisors over pay and promotion (in conjunction with its written policy of nondiscrimination) was fatal to the plaintiffs' assertion of commonality. As in Wal-Mart, White Directory's sales policy was one of broad discretion. Specifically, salesmen had broad discretion to craft their sales pitch to the needs of the specific client.

As a result, there was substantial variation in written and oral sales pitches. Not all members of the class saw the same sales aids or the same salespersons nor were they subject to the same representations with respect to distribution. Evidence of the parties' intent and expectations

14

with respect to distribution will therefore necessarily be individualized and anecdotal, just like the evidence deemed insufficient in Wal-Mart. Thus, even if the actual distribution of phone books was uniform, the lack of uniformity in the representations to class members indicates that there is no "common answer" to the critical question of the intent of the parties to each contract. See Wal-Mart, 131 S. Ct. at 2552.

B.

The extrinsic evidence and the individualized nature of the claims deriving from it forecast all sorts of difficult problems down the road. Plaintiffs would need to introduce individualized evidence, of the kind rejected in Wal-Mart, to prove a specific numerical distribution term -- specifically evidence of what sales aids were used or what sales pitches were given at individual meetings.[*] Individualized evidentiary hearings will be necessary to prove both injury and any damages that may flow from a breach of contract. In contrast, the class action device as applied to this variety of circumstances may

---

[*] It is worth emphasizing that even appellees have never identified a uniform distribution policy within the contracts as the basis for the breach. Rather, their theory of the case has always rested on extrinsic evidence of the representations about distribution made to clients in sales aids and sales conversations.

15

force appellants into a one-size-fits-all defense, compromising what is and should have been their legitimate right to make a defense tailored to individual circumstances. In this case, therefore, the class action method hardly seems "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III.

In the end, we are still left with the question, unanswered by the contract, of what the uniform distribution policy was. Plaintiffs want to have their cake and eat it too. They allege commonality for class certification on the basis of an alleged uniform distribution obligation, and yet expect use of extrinsic evidence to demonstrate that such an obligation existed and was breached. But just as the absence of a uniform discrimination policy was fatal to certification in Wal-Mart, so too is the absence of uniform representations with respect to distribution fatal to the certification effort here. Again, it is the representations that matter, because it is the violation of those representations that alone could lead to a viable breach of contract claim. Accordingly, there is no way to "resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S. Ct. at 2545. I

16

would therefore reverse the class certification order in this case.